VICTORY FIREWORKS & SPECIALTY COMPANY ET AL *v.* OSCAR V. SAXTON

[No. 27, April Term, 1936.]

*Decided May 20th, 1936.*

The cause was argued before BOND, C. J., and OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Michael Paul Smith* and *John J. Fitzpatrick*, with whom were *John H. Filler* and *Moylan, McKeldin & Smith*, on the brief, for the appellants.

*Joshua Clayton*, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

On or about April 23rd, 1932, Oscar V. Saxton, the appellee, sustained serious accidental injury arising out of and in the course of his employment by the Victory Fireworks & Specialty Company, one of the appellants. In due course, the injured employee filed his claim for compensation with the State Industrial Accident Commission of Maryland, under the provisions of article 101 of the Code, as amended, entitled "Workmen's Compensation." After a hearing, the commission found that the claimant had sustained permanent total disability, within the meaning of the Workmen's Compensation Act, as a result of the injury; and on August 19th, 1933, ordered that the employer and the Employers' Liability Assur-

ance Corporation, its insurer, pay the claimant compensation at the rate of $9.02 per week, during the continuance of the permanent total disability, not to exceed, however, the sum of $5,000, subject to the provisions of said article; such compensation to begin as of April 27th, 1932.

It is apparent from the record that the aforegoing order had been fully complied with by the employer and its insurer, at the time of the filing by the claimant of his third petition to the commission for a conversion of the aforesaid compensation into a total lump sum. Upon that petition a hearing was held by the commission on July 23rd, 1935, at which testimony on behalf of the petitioner was taken, and in which the employee, employer, and its insurer participated; and on August 27th, 1935, the commission computed compensation for the last 302 weeks of the compensation period awarded by its former order, on a basis of five per cent. per annum, to be the sum of $2,003.68, and ordered that said amount be paid in a lump sum to the claimant. Permission to the employer and insurer to deduct the said 302 weeks from the compensation period under its original order was authorized.

From the latter award, an appeal was taken to the Circuit Court for Cecil County by the employer and its insurer. The ruling of the lower court in granting a motion *ne recipiatur* to a petition of the appellants filed therein, praying that the order of the commission, dated August 27th, 1935, be rescinded and annulled; and its order dismissing the appeal from the commission, and remanding the case without a hearing on its merits, form the basis of the appeal in this court.

As hereinbefore indicated, two prior petitions by the claimant, for a conversion of the compensation awarded him to a lump sum, were denied by the commission. From one of these rulings an appeal was taken by the claimant to the Circuit Court for Cecil County, and that appeal was dismissed by that court. Admittedly, the two former petitions, and the disposition of them by either the commission or the lower court, can have no bearing

upon the appeal now before us; but we refer to the former appeal to the lower court because a memorandum dealing with its dismissal is found in the record, and in the order dismissing the appeal in the instant case that memorandum is cited as setting forth the reasons for the court's action. The memorandum, however, deals with an order of the commission then before the lower court, which order is not found in the record.

As it appears from the record that the questions sought to be raised by the petition to which the motion *ne recipiatur* was directed embraced the same issues contemplated in the appeal, the petition was unnecessary in the final disposition of the case; and for that reason the granting of the motion was not error.

Section 56 of article 101, as amended by Acts 1935, ch. 545, provides as follows: "Any employer, employee, beneficiary or person feeling aggrieved by any decision of the Commission affecting his interests under this Article may have the same reviewed by a proceeding in the nature of an appeal and initiated in the Circuit Court of the county or in the Common Law Courts of Baltimore City having jurisdiction over the place where the accident occurred or over the person appealing from such decision, and the Court shall determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the Article, and whether it has misconstrued the law and facts applicable in the case decided. If the Court shall determine that the Commission has acted within its powers and has correctly construed the law and facts, the decision of the Commission shall be confirmed; otherwise it shall be reversed or modified. Upon the hearing of such an appeal the Court shall, upon motion of either party filed with the Clerk of the Court according to the practice in civil cases, submit to a jury any question of fact involved in such case. The proceedings in every such an appeal shall be informal and summary, but, full opportunity to be heard shall be had before judgment is pronounced."

In view of the provisions of the aforegoing section of

the act, it is apparent that the appellants were entitled to a hearing before the lower court, and that the action of the court in granting the motion to dismiss the appeal was error.

It is contended by the appellee that the order appealed from is within the discretionary power of the commission, and therefore no appeal will lie to the circuit court. But section 56, as amended, specifically provides for an appeal from "any decision of the Commission affecting" the "interests" of the party appealing. We are of the opinion that the order appealed from in this case is one affecting the interests of the party appealing. Furthermore, the section above quoted provides that upon appeal to the circuit court, that court shall determine whether the commission has exceeded the powers granted it by the article, and whether it has misconstrued the law and facts applicable in the case. The duty is incumbent upon the court, under said section, either to confirm, modify, or reverse the order.

The several contentions advanced by the appellants involve a construction of section 51 of the compensation law, which reads:

"In every case providing for compensation to an employee or his dependent, excepting temporary disability, the Commission may, if in its opinion the facts and circumstances of the case warrant it, convert the compensation to be paid in a partial or total lump sum."

Notwithstanding this clear and emphatic language, which, with a single exception, declares all cases of compensation to be susceptible of action by the commission converting an award to a lump sum, it is urged that awards for permanent total disability cannot be converted for the following reasons:

(a) Because of the possibility of partial or total recovery of the claimant during the compensation period; and

(b) because the claimant may die before the time when he would normally have received the maximum amount of such award.

It is therefore argued that a conversion may result in the payment to a claimant of the equivalent of a greater

sum than he would have received, had the conversion not have occurred, with resulting discrimination against the employer.

In other words, it is contended that the commission erred in basing its lump-sum award upon the assumption that the employee would live, and fail to recuperate, during the period covered by the future payments contemplated in the original award; and that its order does not indicate that it considered the claimant's probable life expectancy, or possible partial or total recovery. It should be borne in mind, however, that the original award in the instant case was based upon findings of permanent total disability, and that there is no testimony in the record tending to show either partial or total recovery. The record does show that the claimant at the time of the conversion was but forty-three years of age, and it is but fair to assume, in the absence of proof to the contrary, that the commission considered his life expectancy in making its lump-sum award.

It may be added that section 56 of article 101, as amended, also provides: "In all Court proceedings under or pursuant to this Article, the decision of the Commission shall be prima facie correct and the burden of proof shall be upon the party attacking the same."

Comparatively speaking, workman's compensation legislation is of modern growth in this country. It has been made necessary through the steady advance of science and invention, and the consequent hazard of those engaged in active employment in industry. To meet the varying conditions with which injured employees and their dependents were confronted, the first Workman's Compensation Act in this state was enacted in 1914. Under its provisions, the State Industrial Accident Commission was created. By the act it is clothed with broad and responsible discretionary powers, and charged with important duties.

Section 54 of article 101, as amended by Acts 1935, ch. 236, provides that: The powers and jurisdiction of the Commission over each case shall be continuing and it may, from time to time, make such modifications or changes

with respect to former findings or orders with respect thereto as in its opinion may be justified; provided, however, that no modification or change of any final award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within three years next following the last final award of compensation, but no award shall be considered a final award under this Section unless it shall have been so designated on the award by the Commission.

Under section 43 of the same article, if aggravation, diminution, or termination of disability, in a pending case, takes place or be discovered after the rate of compensation shall have been established or compensation terminated in any case, the commission may, upon the application of any party in interest, or upon its own motion, readjust for future application the rate of compensation, or, in a proper case, terminate the payments.

It will thus be observed that the Legislature has guarded against the possible contingencies of both recovery or additional disability on the part of the employee from the result of injury arising out of and in the course of his employment, to the end that the liability of the employer, and the benefits to the employee, may be accordingly diminished or increased. While these provisions are found in the act, it is equally apparent that the legislative intent, as embodied in the provisions of section 51, *supra,* was to empower the commission to convert all forms of compensations under its authority, to be paid in a partial or total lump sum, with the exception of compensation for temporary disability, if in its opinion the facts and circumstances of the case so warrant.

Compensation acts are unusual and summary in their nature, containing in their structure a correlative series of advantages and disadvantages; for each of which burden imposed upon one of the parties may be found a compensating concession yielded by the other. From this system of checks and balances, devised for the mutual interest of employer and employee, with its corresponding benefits and burdens, improved by successive legislative

enactments, and clarified by judicial interpretations, has been evolved the present Workman's Compensation Law.

As was said in *Cambridge Mfg. Co. v. Johnson*, 160 Md. 248, 153 A. 283, 284: "In the light of the declared purpose of this legislation in the State of Maryland, as also the general purpose of all such legislation in this country and in England, we are bound to conclude that the purpose was to withdraw from litigation common law actions brought by employees against employers for accidental injuries growing out of and sustained in the course of the employment, and to substitute in the place of the right of action in such cases certain definite and specified amounts to be paid to the injured party, and to his dependents as defined in the statute in case the injured party died as a result of the injury within three years from the time of the accident causing the injury. Sound economic thought recognized that it is inevitable that employees engaged in extra-hazardous occupation will be injured or killed and that the care and support of such persons or their dependents will become a burden upon the state, as representing the people at large, and that such result flowing from the conduct of extra-hazardous businesses is a legitimate expense of the business itself and ought to be borne by it in the same manner that the hazard from fire or the replacement of broken or damaged machinery is taken care of. It was also recognized that the common law defenses, resorted to in actions brought by the employee against the employer, of the fellow-servant doctrine, assumption of risk, and contributory negligence, frequently resulted in denying any recovery whatever; while, on the other hand, experience had shown a strong tendency on the part of juries to mulct defendants in heavy damages, sometimes out of all proportion to the actual injury sustained. That the people of the state, at the time of the passage of the present Workmen's Compensation Act, fully realized the evils of the old system, is shown by the preamble to the original act. With this in mind, the statute was designed to benefit both parties: the employers, by making it

impossible to have exorbitant and unreasonable judgments obtained against them; and the employees, by providing for them definite and certain compensation for bona fide injuries sustained during their employment, without the danger of being defeated by the application of the hard and fast rules of the common law. The cost to the employer of the proper operation of such a system is not onerous, if by the administration of the law its subjects are confined to those provided in the statute and in the manner therein provided."

Holding, as we do, the view that the lower court should have heard the appeal from the commission, to the end that it be either confirmed, reversed, or modified by that court, it follows that its order dismissing the appeal will be reversed, and the case remanded for further proceedings.

> *Order reversed, and case remanded for further proceedings in accordance with this opinion; with costs to the appellants.*