518 A.2d 462

Gerard BERDYCH

v.

**DEPARTMENT OF EMPLOYMENT AND TRAINING.**

**No. 399, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Dec. 10, 1986.

Brian J. Gibbons (Karen Czapanskiy, Gina Hertzig and John Billmyre, on brief), Baltimore, for appellant.

Amy S. Scherr, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Alexander Wright, Jr., Asst. Atty. Gen., on brief), Baltimore, for appellee.

Argued before WEANT, BISHOP and KARWACKI, JJ.

BISHOP, Judge.

After becoming unemployed, Gerard Berdych, appellant, filed a claim for unemployment insurance benefits with the Department of Employment and Training (DET). A claims examiner determined that because appellant quit his employment without good cause, he was disqualified from receiving unemployment benefits pursuant to MD.ANN. CODE art. 95A, § 6(a).

Berdych appealed his disqualification and a DET hearing examiner, after conducting a full evidentiary hearing, affirmed the denial of benefits. Steadfastly contending that he is eligible for benefits, appellant challenged the claims and hearing examiners' conclusions in two other fora: first, DET's Board of Appeals and then Baltimore County Circuit Court. In each case, the denial of benefits was affirmed.

On appeal, Berdych raises three issues:

I. Did DET properly deny appellant his unemployment benefits because he voluntarily left his job without good cause pursuant to article 95A, section 6(a) of the Maryland Code?

II. Did DET's waiver of various eligibility requirements render section 6(a) disqualification inapplicable to his claim?

III. Did the "suitable work" limitation pursuant to article 95A, section 6(b) of the Maryland Code excuse appellant from section 6(a) disqualification?

## FACTS

On April 14, 1985, Gerard Berdych lost his job when his employer, Western Electric, shut down the plant at which he had worked for fourteen years. In anticipation of the lay off, appellant decided to acquire additional occupational skills that would enhance his prospects of employment. On March 25, 1985, he began classes in industrial maintenance at the Eastside Occupational Center (Eastside). The length of the course was five months, from March 25th through the end of August.

Eastside is a state-approved training school, enrollment at which entitles its out-of-work students to receive unemployment compensation without complying with all the statutory conditions for eligibility. Specifically, the statute waives

> the application of the provisions in this subsection relating to availability for work and active search for work or the provisions of § 6(d) of this article relating to failure to apply for, or refusal to accept suitable work.

MD.ANN.CODE art. 95A, § 4(c) (1985). Pursuant to this provision, students who receive a waiver from DET are relieved of their obligations to seek employment and to accept suitable work, if offered. Since Berdych had enrolled at a state-approved training facility, DET granted his request for a waiver of these requirements.

After he started the training program and rather than rely on unemployment compensation to support his family, Berdych sought and procured temporary, full-time employment as a laborer at New Jersey Steel Fabricating Division in Bowie, Maryland. When he accepted this position, his only intention was to remain at this job until he completed his retraining program at Eastside. Throughout his employment at New Jersey Steel, his employers were cooperative, providing Berdych with a flexible working schedule so that he could attend evening classes. His career aspirations were in industrial maintenance, which would offer him greater career opportunities and job security.

Immediately, it became obvious that the full-time job interfered with appellant's studies at Eastside. In addition to the long hours, the job was physically demanding and required a commute of approximately one hundred miles. On April 26, 1983, after just eleven days on the job at New Jersey Steel, appellant quit and switched to a daytime training program. Beginning May 30, 1983, he attended school five days a week, 36 hours a week, through the end of August.

Because he found that it was not possible to juggle work and school, appellant was forced to apply for unemployment

benefits on May 20, 1985. DET, however, found him ineligible for benefits under the "voluntary quit" provision of article 95A, section 6(a) of the Maryland Code. The grounds for DET's disqualification were that he voluntarily left his job at New Jersey Steel. This determination was affirmed by both the Board and the circuit court, despite the fact that DET had granted him the waiver that permitted him to attend the Eastside retraining course and collect unemployment benefits without having to seek or accept work.

I.

*Disqualification of Benefits Pursuant to Section 6(a)*

Maryland unemployment insurance law provides the circumstances under which DET must disqualify a claimant from receiving unemployment benefits:

*Voluntarily leaving work.*—If the Executive Director finds that the individual's unemployment is due to his leaving work voluntarily without good cause. Only a cause which is directly attributable to, arising from, or connected with the conditions of employment or actions of the employer may be considered good cause.... Leaving work to become self-employed, to accompany or join one's spouse in a new locality or to attend an educational institution is neither good cause nor valid circumstance for voluntarily leaving work.

MD.ANN.CODE art. 95A, § 6(a) (1985). Educational institution is defined as

... [an] institution in which

(i) participants, trainees, or students offered an organized course of study or training; and

(ii) the courses of study or training are academic, technical, trade, or preparatory for gainful employment in a recognized occupation.

*Id.* § 20(u)(1).

The statute plainly enunciates both general and specific grounds on which a claimant may be disqualified. In gener-

al, DET must deny unemployment benefits if the claimant left his job without good cause, which is circumscribed to mean only cause "directly attributable to, arising from, or connected with the conditions of employment or actions of the employer." *Id.* § 6(a). In particular, the statute enumerates specific situations that, on their faces, do not constitute good cause. One is when the claimant voluntarily leaves work to attend an educational institution, including one that provides occupational training.

■ The facts of this case support DET's denial of unemployment insurance benefits to appellant pursuant to section 6(a). When we apply the particular grounds for disqualification that section 6(a) enumerates, it is patent that DET's denial of benefits must be sustained. Leaving work to concentrate on his studies at Eastside is precisely a ground that the Maryland legislature singled out for disqualification.

■ Moreover, application of the general legal standard provides an independent ground for affirming DET's determination. Under that standard, DET must not permit a claimant to receive unemployment benefits unless his reasons for leaving the job were "directly attributable to, arising from, or connected with the conditions of employment or actions of the employer." MD.ANN.CODE art. 95A, § 6(a) (1985). The manifest meaning of the statute requires that a claimant's reasons be job-related, *cf. Management Personnel Services, Inc. v. Sandefur*, 300 Md. 332, 342, 478 A.2d 310 (1984); *Beye v. Bureau of National Affairs*, 59 Md.App. 642, 652, 477 A.2d 1197, *cert. denied*, 301 Md. 639, 484 A.2d 274 (1984). The Court of Appeals has explained that such reasons must " '. . . reasonably impel the average, able-bodied qualified worker to give up his or her employment.' " *Board of Education of Montgomery County v. Paynter*, 303 Md. 22, 37, 491 A.2d 1186 (1985) (quoting *Uniweld Products, Inc. v. Industrial Relations Commission*, 277 So.2d 827, 829 (Fla.App.1973)). In the case *sub judice*, the reasons were clearly not job-re-

lated. In fact, New Jersey Steel was sympathetic of and cooperative towards appellant's educational pursuits. Berdych's reasons for leaving his employment were purely personal. Because his job interfered with his studies, Berdych voluntarily chose to quit his job and channel all his efforts into his studies at Eastside. As commendable as this decision may be, it constitutes, as a matter of law, valid grounds for DET's disqualification of his benefits.

By relying on related provisions of Maryland unemployment insurance law, appellant nevertheless attempts to avoid the impact of section 6(a) disqualification. First, Berdych points to the fact that DET issued to him a waiver of various eligibility requirements pursuant to article 95A, section 4(c) of the Maryland Code. This waiver, he argues, renders the section 6(a) disqualification inapplicable to his situation. Second, appellant relies on article 95A, section 6(b) of the Maryland Code, which disqualifies claimants for benefits when they failed to apply for or accept "suitable work." Reading this provision together with section 6(a), Berdych contends that he is excused from a disqualification under section 6(a) if he voluntarily quit an "unsuitable" job. We will address each of these statutory arguments in order.

## II.

### Scope of Waiver Under Section 4(c)

The statute clearly articulates the scope of appellant's waiver:

> ... nor shall such individual be denied benefits with respect to any week in which he is in training with the approval of the Executive Director by reason of the application of the provisions in this subsection, relating to availability for work and active search for work or the provisions of § 6(d) of this article relating to failure to apply for, or refusal to accept suitable work.

MD.ANN.CODE art. 95A, § 4(c) (1985). This provision relieves claimants like Berdych, who have qualified for the waiver, from the obligations of actively seeking and accept-

ing suitable work as sections 4(c) and 6(d) require. Section 4(c) sets out these requirements as "conditions of eligibility," while in section 6(d) the requirements are grounds for "disqualification for benefits." In both cases, however, the statute speaks in terms of requirements for *unemployed* claimants, i.e. what an unemployed individual must do to be eligible for unemployment benefits.

■ The implications of this statutory scheme are clear. Section 4(c) excuses claimants from those requirements normally imposed while they are unemployed and in search of work. Only those requirements may be waived by DET. Other conditions, such as section 6(a) which disqualifies an *employed* claimant who voluntarily quits his or her job, do not fall within the ambit of the waiver provision. Accordingly, a claimant possessing a valid waiver may be disqualified for voluntarily quitting his or her job without good cause.[1]

---

1. This construction of the Maryland provision is in harmony with the corresponding federal statutory provision, on which it is based. In order to encourage unemployed workers to attend state-approved occupational training programs, Congress amended federal unemployment insurance law by requiring that

     compensation shall not be denied to an individual because he is in training with the approval of the State agency (or because of the application, to any week in training, of State law provisions relating to availability for work, active search for work, or refusal to accept work);

   26 U.S.C. § 3304(a)(8) (1983). From the plain meaning of this statute, which speaks exclusively in terms of excusing claimants from the requirements imposed while they are unemployed and in search of work, it is clear that Congress did not contemplate the waiver provision applying to conditions like section 6(a), which disqualifies *employed* claimants who voluntarily quit their jobs.

   This sentiment is echoed by Congress throughout the legislative history. Nowhere does Congress speak in terms of assisting workers who voluntarily quit their jobs, but rather in terms of helping "laid off workers":

     In order to encourage *laid off workers* to participate in training programs authorized under this title while they are receiving unemployment benefits and, therefore, possibly shorten the duration of their unemployment, the bill allows for participants to continue to be eligible for unemployment compensation while participating in the authorized training.

Appellant assails the literal construction of section 4(c) on grounds that it penalizes industrious claimants who try to avoid the need to collect benefits while they are attending state-approved, job-training schools. It is uncontroverted that awarding appellant a waiver pursuant to section 4(c) entitled him to receive unemployment compensation without complying with several of the eligibility requirements. His problems began, however, when he attempted to hold down a temporary, full-time job while attending classes at Eastside, an endeavor that ultimately proved to be too onerous. Appellant argues that the statute should be interpreted in a manner that will not penalize a claimant possessing a waiver from quitting a job that the statute did not require him to seek or accept.

To effect this "more equitable" result, Berdych encourages this Court to revise the statute in either of two ways. First, that we should construe broadly the waiver provision in section 4(c) and determine that the legislature's intent was to apply the waiver provision to the voluntary leave disqualification under section 6(a). This construction, however, overlooks the fact that the legislature conspicuously omitted the applicability of the waiver provision to the voluntary leave disqualification. Second, Berdych suggests that we should reconstrue educational institution in section

---

S.Rep. No. 97–469, 91st Cong., 2d Sess. 31–32 (1982), U.S. Code Cong. & Admin.News 1982, pp. 2636, 2666–2667 (emphasis added). To effect this end, Congress outlined the scope of remedial measures that states must take. Conspicuously omitting any reference to exempting claimants from the voluntary quit disqualifications, Congress confined the eligibility requirements, from which a claimant should be excused, to those to which an unemployed worker is subject:

> The committee believes that the application of the provisions of the state laws regarding availability for work, active search for work, or refusal of suitable work should not be used to discourage benefit claimants from entering training which has been approved by state agencies.

*Id.* at 75.

In addition the statutes involved in the case *sub judice*, must have been approved by the Secretary of Labor, as consistent with Federal law, in order for Maryland to receive Federal funds. 26 U.S.C. § 3304 and 20 CFR § 601 (1986).

6(a) so as to exclude institutions providing state-approved training programs. Although such a construction renders the voluntary quit disqualification inapplicable to students like Berdych, it conflicts with the legislature's express decision to define broadly educational institution so as to include within its meaning occupational training institutions such as Eastside. *See* MD.ANN.CODE art. 95A, § 20(u)(1) (1985) (defining educational institution).

■ A court's function is to interpret the statute and not to rewrite it to mitigate its possible harsh consequences. If the language of the statute is plain and without ambiguity, its literal meaning prevails. *E.g. Erwin and Shafer, Inc. v. Pabst Brewing Company, Inc.*, 304 Md. 302, 498 A.2d 1188 (1985); *Sites v. State*, 300 Md. 702, 481 A.2d 192 (1984); *In re Arnold*, 298 Md. 515, 471 A.2d 313 (1984); *Brown v. Hornbeck*, 54 Md.App. 404, 458 A.2d 900 (1983). In the case *sub judice*, the waiver provision clearly provided appellant with only a limited authorization to obtain benefits without having to look for or accept work during the course of his approved job training. By the literal terms of the statute, Berdych was not authorized to leave his job voluntarily without disqualification, even a job that the statute did not require him to seek or accept. We are bound by the literal terms expressed clearly and unambiguously in the statute. To enlarge the scope of the waiver provision would transcend our judicial function, and would be a judicial activist approach that the Court of Appeals has explicitly rejected:

> ... [C]onstruing a statute liberally and adding to it, by judicial fiat, a provision which the Legislature did not see fit to include are not one and the same thing. As stated by Justice Brandeis for the Court, in *Iselin v. United States*, 270 U.S. 245, 251 [46 S.Ct. 248, 250, 70 L.Ed. 566]: "What the ... [appellant] asks is not a construction of the statute, but in effect an enlargement of it by the Courts, so what was admitted ..., may be included within its scope. To supply omissions transcends the judicial function."

*Amalgamated Casualty Insurance Company v. Helms,*
239 Md. 529, 534–35, 212 A.2d 311 (1965).

## III.

### *Effect of Section 6(d) on Voluntary Quit Standard Under Section 6(a)*

Section 6 sets out eight separate disqualifying provisions which authorize DET to deny benefits to unemployed claimants. MD.ANN.CODE art. 95A, § 6(a)–(h) (1985). As we have discussed, section 6(a) authorizes disqualification when DET determines a claimant voluntarily quit his job without good cause. In contrast, section 6(d) requires that an individual be disqualified when he or she failed to apply for or accept "suitable work" while unemployed. In addressing the issue of what constitutes "suitable work," the statute provides:

(1) In determining whether or not any work is suitable for an individual, the Executive Director shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.

(2) Notwithstanding any other provisions of this article, no work shall be deemed suitable and benefits shall not be denied under this article to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (A) if the position offered is vacant due directly to a strike, lockout, or other labor dispute; (B) if the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; (C) if as a condition of being employed the individual would be required to join a company union or to

resign from or refrain from joining any bona fide labor organization.

*Id.* § 6(d)(1)–(2).

It is clear that the statute's extensive explanation of what constitutes "suitable work" functions as a limitation on the section 6(d) disqualification. For example, DET may not deny benefits to an individual who refused to accept work "if the wages, hours, or other conditions of the work are substantially less favorable to the individual than those prevailing for similar work in the locality." *Id.* § 6(d). Moreover, DET must consider "the distance of the available work from his residence" in determining whether the work is suitable. *Id.* § 6(d)(1). If DET concludes that significantly lower wages, longer commute and other onerous working conditions render the job unsuitable, the claimant may not be disqualified for his or her failure to apply for or accept that job.

Appellant contends that his job at New Jersey Steel was unsuitable for employment for several reasons: the physical demands were great; his employer imposed some mandatory overtime; the daily commute exceeded 100 miles and wages were several dollars lower than his previous job. Appellant contends that these combined factors rendered the job unsuitable so that DET should not have disqualified him because he voluntarily quit an unsuitable job.

■ Appellant's argument rests on the assumption that the "suitable work" limitation under section 6(d) should be applicable to the voluntary quit disqualification under section 6(a). Both the structure and language of the relevant statutory provisions ineluctably lead us to the conclusion that sections 6(a) and 6(d) should not be read together.

Each of the eight separate disqualifications in section 6 is neither contingent upon nor relevant to the others. The "suitable work" limitation is subsumed under section 6(d), the disqualification for failure to apply for or accept work. To engraft this limitation onto any of the remaining disqualifications, either the voluntary leave disqualification or any

other, violates the structure of section 6. If the legislature had intended the "suitable work" limitations to be applicable to the other subsections, it would have so provided.

A comparison of the language of subsections 6(a) and (d) bears out our conclusion. The voluntary quit disqualification under subsection 6(a) addresses the situations when an *employed* individual may quit his job and still receive unemployment compensation. As we discussed in part I, *supra*, subsection 6(a) enumerates both general and particular instances when an *employed* individual will not become ineligible for voluntarily leaving his job. In contrast, the job suitability limitation in subsection 6(d) speaks exclusively in terms of an *unemployed* claimant who "refus[es] ... to accept *new* work." Accordingly, this limitation is applicable only to claimants who become unemployed and then refuse to seek or accept subsequent, new, unsuitable work, i.e. the section 6(d) disqualification.

Since the subsection 6(d) limitation on suitability of work does not apply to the voluntary quit disqualification of subsection 6(a), we need not address appellant's contention that his job at New Jersey Steel constituted an unsuitable job. Rather, our conclusion in section I controls: DET acted in compliance with the applicable statute when it denied benefits to appellant because he voluntarily quit his job without good cause pursuant to section 6(a).[2]

JUDGMENT AFFIRMED;

COSTS OF PREPARATION AND FILING OF TRANSCRIPT OF TESTIMONY, PRINTED RECORD EXTRACT AND APPELLANT'S BRIEF TO BE PAID BY APPELLANT. ALL OTHER COSTS AND FEES TO BE PAID BY APPELLEE.

---

**2.** While DET may have acted legally and that while our holding is required by the statutes, remedial legislation could be enacted so that individuals such as Gerard Berdych will not be penalized because they are highly motivated.