614 A.2d 1035

C & R CONTRACTORS et al.

v.

Robert A. WAGNER.

No. 113, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Oct. 30, 1992.

802

Howard P. Miller (Dirska & Levin, on the brief), Columbia, for appellants.

Dennis F. O'Brien (White, Mindel, Clarke & Foard, on the brief), Towson, for appellee.

Argued before ALPERT, WENNER and CATHELL, JJ.

CATHELL, Judge.

Appellee, Robert A. Wagner, was awarded a lump-sum payment of $60,000 by the Workers' Compensation Commission on April 19, 1991, pursuant to Article 101, section 49 of the Maryland Annotated Code (1985) (repealed and reenacted 1991).[1] The award was subsequently affirmed by the Circuit Court for Baltimore County. A timely appeal was noted by appellant, C & R Contractors. The appellant alleges here:

I. The trial court erred in finding that the Workers' Compensation Commission did not abuse its discretion by awarding the claimant a lump sum for sixty thousand dollars ($60,000) for reasons that were not either a business or living necessity and which would reduce his weekly benefits to an unacceptably low amount.

---

**1.** Md.Code Ann., Labor & Emp. § 9–729 (1991). Article 101 has been recodified as Title 9 of the Labor and Employment Article. This recent recodification contained no substantive changes pertinent to the issues before us. We shall refer to both Article 101 and Title 9 interchangeably.

II. The trial court erred in finding that the Workers' Compensation Commission had the legal authority and/or jurisdiction to award a lump sum payment for sixty thousand dollars ($60,000) to a claimant found to be permanently totally disabled when the initial forty five thousand dollars ($45,000) had not been paid.

III. The circuit court erred in denying the appellants' motion for summary judgment.

## Facts

Appellee was injured on January 8, 1980. After first receiving temporary total disability and vocational rehabilitation, he was ultimately found to be permanently totally disabled and awarded benefits at the rate of $106 per week. Thereafter, pursuant to the provisions of section 49, he requested and was awarded a lump-sum payment in the amount of $60,000.[2]

During the proceedings for the requested lump-sum payment, the appellee primarily proffered that a lump sum was required to facilitate the purchase of a $159,000 house. He proffered that the house was necessary because he had been living with his wife and two children in a house with his parents. This living arrangement, according to appellee, forced him and his wife to sleep in the same room with their children separated only by a partition.[3] He also stated that he wanted to buy a house in order to build equity for his wife in case he died, given that he could not procure life insurance. Additionally, the lump-sum award was to be used to pay off his debts. As we have said, the Commission ultimately awarded a lump-sum payment that was later affirmed on appeal by the circuit court. We shall first address appellant's second issue.

---

2. There were other Commission orders and actions in respect to the parties that we do not describe as they have no bearing on the issues before us.

3. This living arrangement predated his compensable injury.

## II.

**Did the trial court err in finding that the Workers' Compensation Commission had the legal authority and/or jurisdiction to award a lump-sum payment for sixty thousand dollars ($60,000) in a permanent total disability case where the initial forty five thousand dollars ($45,000) had not been paid?**

█ Appellant argues that "a lump sum may not be granted for a sum which exceeds the compensation benefits awarded to the Claimant and allowed by law." In support of this contention, appellant cites to section 36(1)(a) of Article 101 [4] which states that payments under that section cannot exceed $45,000. That section, however, also provides that if total disability shall continue after a total of $45,000 has been paid, then "further weekly payments ... shall be paid to him during such disability." Md.Ann.Code art. 101, § 36 (1985) (repealed and reenacted 1991). It is the interplay of these two provisions that gives rise to the question raised by appellant. To resolve the question, we must determine the result of this intrasectional interaction.

In *State v. Bricker*, 321 Md. 86, 92–93, 581 A.2d 9 (1990), the Court of Appeals recently reviewed the standards of statutory construction, saying:

When interpreting a statute, the starting point is the wording of the relevant provisions. If "the language in question [is] so clearly consistent with apparent purpose (and not productive of any absurd result) ... further research [is] unnecessary." ... Resultant conclusions are to be reasonable, logical and consistent with common sense.

When several statutes are *in pari materia*, any interpretation must be made with full awareness of *all* the relevant enactments. It is presumed that the General Assembly acted with full knowledge of prior legislation and intended statutes that affect the same subject matter

---

**4.** Labor & Emp. § 9–637.

to blend into a consistent and harmonious body of law. Therefore, various consistent and related enactments, although made at different times and without reference to one another, nevertheless should be harmonized as much as possible. [Citations omitted, emphasis added, bracketed material in original.]

*See Richmond v. State,* 326. Md. 257, 262, 604 A.2d 483 (1992) ("[W]e approach the analysis ... from a 'commonsensical,' ... perspective....") (citations omitted); *Crawford v. Leahy,* 326 Md. 160, 166, 604 A.2d 73 (1992); *Ball v. United Parcel Serv., Inc.,* 325 Md. 652, 656, 602 A.2d 1176 (1992); *Stambaugh v. Child Support Enforcement Admin.,* 323 Md. 106, 110, 591 A.2d 501 (1991); *Privette v. State,* 320 Md. 738, 744, 580 A.2d 188 (1990); *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126 (1989); *NCR Corp. v. Comptroller of the Treasury,* 313 Md. 118, 125, 544 A.2d 764 (1988) ("[L]egislative history may help to provide the appropriate context."); *Heileman Brewing Co. v. Stroh Brewery Co.,* 308 Md. 746, 754, 521 A.2d 1225 (1987); *Vallario v. State Rds. Comm'n,* 290 Md. 2, 6, 426 A.2d 1384 (1981).

In *Swarthmore Co. v. Kaestner,* 258 Md. 517, 527, 266 A.2d 341 (1970), the Court of Appeals said: "We should not presume that the legislative body intended to enact an ineffective and invalid law." *See Bright v. Unsatisfied Claim and Judgment Fund Bd.,* 275 Md. 165, 169, 338 A.2d 248 (1975) ("This is true ... even if ... the policy or impact of the legislation is unwise or harsh."); *Cox v. Prince George's County,* 86 Md.App. 179, 190, 586 A.2d 43 (1991) ("The cardinal rule of statutory construction is to ascertain and *effectuate* the intention of the Legislature.") (emphasis added); *Berdych v. Dep't of Employment and Training,* 69 Md.App. 484, 493, 518 A.2d 462 (1986) ("A court's function is to interpret the statute and not to rewrite it to mitigate its possible harsh consequences.); *Kline v. Fuller,* 56 Md.App. 294, 309, 467 A.2d 786 (1983); *Brown v. Hornbeck,* 54 Md.App. 404, 408, 458 A.2d 900 (1983), *cert. denied,* 297 Md. 108 (1983). *See also Tucker v. Fireman's*

*Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986); *Coer-per v. Comptroller of the Treasury,* 265 Md. 3, 6, 288 A.2d 187 (1972); *Pan American Sulphur Co. v. State Dep't of Assessments and Taxation,* 251 Md. 620, 627, 248 A.2d 354 (1968); *Woodmont Country Club, Inc. v. Montgomery County,* 61 Md.App. 229, 236, 486 A.2d 218 (1985). We said in *Consolidated Rail Corp. v. State,* 87 Md.App. 287, 292–93, 589 A.2d 569 (1991): "[A] court should neither resort to subtle or forced interpretations for the purpose of extending or limiting the operation of the statute. . . ." (Citations omitted.)

In *Victor v. Proctor & Gamble Mfg. Co.,* 318 Md. 624, 627–28, 569 A.2d 697 (1990), the Court of Appeals reiterated the purpose of the worker's compensation statute: "We have not addressed this issue before, and, to resolve it, we rely on the language of the statute in the context of the goals and objectives it seeks to achieve." (Citations omitted.) It noted that:

> The Workman's Compensation Act was passed to promote the general welfare of the State and *to prevent the State and its taxpayers from having to care for injured workmen and their dependents,* when under the law as it previously existed, such workmen could not recover damages for their injuries.

*Id.* at 628, 569 A.2d 697 (quoting *Paul v. Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544 (1944)) (emphasis added). The Court further opined:

> The short of it is that the Act
>
> > should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant.

*Victor,* 318 Md. at 629, 569 A.2d 697 (quoting *Howard County Ass'n for Retarded Citizens, Inc. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210 (1980)). It then emphasized that the act's general purpose is to provide compensation for loss of *earning capacity. Id.* at 630, 569 A.2d 697.

We said in *Montgomery County v. Lake,* 68 Md.App. 269, 273, 511 A.2d 541 (1986):

> The Act is to be liberally and broadly construed in furtherance of the benevolent purpose which prompted its enactment. While the Act is to be liberally construed, a court is not at liberty to disregard its plain meaning. [Citations omitted.]

We also stated that "no presumption of correctness attaches to the Commission's interpretations of the pertinent provisions of the statute." *Id.* at 273–74, 511 A.2d 541. *See also Symons v. R.D. Grier & Sons Co.,* 10 Md.App. 498, 500, 271 A.2d 398 (1970) (explaining that factual decisions of the Commission are *prima facie* correct while decisions involving questions of law are not).

Prior to 1973, the Worker's Compensation Act did not contain a provision for continuing payment. By Chapter 671 of the Acts of 1973, the legislature added a provision to Section 36 providing that irrespective of $45,000 being stated as a maximum: "if the employee's total disability shall continue after a total of $45,000.00 has been paid, then further weekly payments at the rate previously paid shall be paid to him during such disability." Act approved May 24, 1973, ch. 671, 1973 Md.Laws 1400. The purpose clause of Chapter 671 stated that it was "making provision for payment of additional benefits for total disability above the statutory limit under certain conditions...." *Id.* at 1399. The only condition mentioned in the body of the act was that total disability must be continuing. *Id.* at 1400. At the same time, the legislature substantively changed section 49 as a result of the modification of section 36. Section 49 was modified to prohibit the inclusion of any of the continuing payments (after the $45,000) in a lump-sum award: "[H]owever, that no lump sum may be granted from compensation payable after the sum of $45,000.00 has been paid." *Id.* at 1404. As of 1973, it is clear that the two provisions, *i.e.,* the provision for payments in excess of the $45,000 cap and the provision that they cannot be included in a lump-sum award, were interconnected and were to be

construed together in order to achieve a harmonious result. Thus, the statutes then extant explicitly forbade that which appellant claims is inherently prohibited in the statutes as they now exist.

Had the statutes remained explicit, the resolution of this issue would be clear. The prohibition, however, is no longer contained in the code. The Worker's Compensation Act was amended in 1986. Act approved May 27, 1986, ch. 767, 1986 Md.Laws 2929. One of the amendments was an express repeal of the provision in section 49 prohibiting the inclusion of compensation recoverable after $45,000 has been paid in a lump-sum award. *Id.*

As we perceive the legislative history of the related sections, it is clear that when the legislature first provided for the continuation of payments beyond the amount of $45,000 it realized the potential impact it might have on section 49. In accordance with this recognition, it amended section 49 to express its legislative intent to prohibit such awards. Act approved May 24, 1973, ch. 671, 1973 Md. Laws 1404. Thereafter, the legislature repealed the prohibition. Act approved May 27, 1986, ch. 767, 1986 Md. Laws 2929. In *In re Criminal Investigation No. 1–162,* 307 Md. 674, 689, 516 A.2d 976 (1986), the Court said: "Generally, a substantive amendment to an existing statute indicates an intent to change the meaning of that statute." (Citations omitted.) By creating a prohibition and then repealing it, the legislature appears to have spoken. Thus, *to a point,* the legislative intent is clear. Lump-sum awards of compensation payable after the payment of $45,000 are no longer absolutely prohibited. That, however, does not fully answer the question raised by appellant that we now rephrase as: Must the *period* for which the $45,000 cap exists (regardless of whether the $45,000 is paid in periodic payments or a lump sum payment) have elapsed before a lump sum may be awarded for benefits payable after that period.

Appellant attempts to argue in its brief that certain occurrences could transpire, such as recovery of the claimant or death of the claimant, resulting in a lump-sum award

in excess of benefits otherwise ultimately payable in periodic payments. A similar argument was made in *Victory Fireworks & Specialty Co. v. Saxton,* 170 Md. 446, 450, 185 A. 123 (1936), where the employer claimed, irrespective of the fact that the statute permitted lump-sum awards, that they could not be awarded:

> (a) Because of the possibility of partial or total recovery of the claimant during the compensation period; and (b) because the claimant may die before the time when he would normally have received the maximum amount of such award.[5]

The Court said that lump-sum awards were permitted under the statute, even in light of the concerns of the employer, and then opined: "[T]he statute was designed to benefit both parties: the employers, by making it impossible to have exorbitant and unreasonable judgments obtained against them; and the employees, by providing for them definite and certain compensation...." *Id.* at 453–54, 185 A. 123.

Appellant also asserts that the sum payable after the $45,000 cap is otherwise purely speculative. We note that it is no more speculative than any portion of the compensation payable at the time of the initial award except that the statute specifically limits the initial amount to $45,000. The claimant's survivors would be limited [6] by that amount, if the claimant expired prior to receiving $45,000. *See* Md. Code Ann., Labor & Emp. § 9–640 (1991) ("Survival of Compensation").

This is not to say that the Commission has unlimited power to make lump-sum awards in respect to the post $45,000 benefits once the right to the latter benefits has accrued. The Commission's discretion in respect to lump-

---

5. Under the current statute which requires the continuation of benefits after the initial award so long as total disability continues, the claimant, barring recovery, will normally die during that subsequent benefit period.

6. Except as to cost-of-living allowances.

sum amounts is not unbridled. It is clear that the Commission must have an evidentiary basis supporting the extraordinary aspect of need expressed by the claimant and the amount of any such award. We shall later address these sub-issues of need and amount.

We are first constrained to conclude that while a lump-sum award may be authorized in respect to benefits due after a total of $45,000 has been paid, that lump-sum award may not be made until the termination of the period for which the original $45,000 is awarded. We explain.

We have noted that until 1986 lump-sum awards with respect to the additional period of benefits were expressly prohibited, and that by Chapter 767 of the Acts of 1986 this prohibition was repealed and removed from section 49. While that repeal operates to remove the absolute prohibition, the available legislative history does not indicate that the General Assembly intended to affect the time when such an award can be made.

Our examination of the available legislative history indicates that the primary purpose of Chapter 767 of the Acts of 1986 was to clarify that when lump-sum awards were made from the Subsequent Injury Fund that the Fund be entitled to a reduction in weekly benefits payable to reflect the amount of the lump-sum award previously paid by it. Constitutional & Administrative Law Committee, House Bill No. 1063, B.F. (1986). The bills were apparently first prepared and presented by the Subsequent Injury Fund. *Id.* (see letter of Sophia L. Swope, supervising attorney for the Fund, dated January 13, 1986, to Diana Vincent of the AFL–CIO). The Fund asserted that the purpose of the bill(s) was to correct a problem resulting from the Fund's termination of weekly payments when it had to make lump-sum payments, by providing for weekly deduction amounts applicable to the awards. Constitutional & Administrative Law Committee, House Bill No. 1063, B.F. (1986). Another report, prepared prior to the bill's passage, indicated that the bill provided for a weekly "rate" reduction when lump-sum awards were made and further noted that the bill

applied to payments made by the Subsequent Injury Fund. *Id.*[7]

The Department of Fiscal Services summarized the bill as applicable to awards "in cases where prior awards have been made by the Subsequent Injury Fund," and that the bill's purpose was to provide a method for authorizing and computing the deductions in weekly benefits of prior awards. *Id.* Those deductions are required when lump sums are awarded. Throughout the progress of the bill, the general thrust was to accommodate the needs of the Subsequent Injury Fund for recoupment. *Id.*

It was not until March 20, 1986, that the House adopted an amendment that stated "On page 2, strike beginning with 'However' in line 3 down through 'paid' in line 4." *Id.* The matter stricken by that amendment was the prohibition that had been in the statute since 1973: "[H]owever, no lump sum may be granted from compensation payable after the sum of $45,000 has been paid." *Id.* The only explanation for the repeal of the prohibition clause that we have discovered in the legislative history files was a letter written to the chairman of the committee on Constitutional and Administration Law, dated just two days before the amendment, from the Executive Assistant to the President of the Maryland State & D.C. AFL–CIO, Diana K. Vincent. That letter, as pertinent to the issue in the case *sub judice*, stated:

> In working with H.B. 1063, it occurred to me that one sentence on page 2 of the bill, if the new language is adopted, will become archaic.

---

**7.** Additionally, handwritten notes contained in the legislative history files state:
H.B. 1063–Subsequent Injury Fund
Collins
—perm. total cases involving lifetime payments
—allows recoupment of credit
—goal—establish uniform procedures
—accommodate payment without penalty to the claimant
*Id.*

Page 2 Lines 3 and 4: "However, no lump sum may be granted from compensation payable after the sum of $45,000 has been paid."

This limitation of $45,000 was included because there was no mechanism to recover an amount over the $45,000 paid out in a lump sum. The new language establishes a mechanism.... to get credit for a lump sum paid. Example: Claimant is permanently and totally disabled.... *[A]fter six or seven years, he has "used-up" the guaranteed amount of $45,000.* Now he needs a lump sum amount for some justifiable reason. Under current law, he is not eligible for a lump sum payment because there is no mechanism ... to get credit for the lump sum payment. The new language provides the mechanism....

Mark touched base with Commissioner Rosenbaum and the Commissioner agreed that the reference to the $45,-000 limit should be deleted. [Emphasis added.]

*Id.*

It thus appears that the prior prohibition was eliminated because the Legislature perceived that it was no longer necessary because it was, by Chapter 767, providing a means for employers and the Fund to reduce weekly benefits in respect to the recovery of any sums paid by them for the post $45,000 period under the lump-sum provisions of the Worker's Compensation Act.

As we perceive the intent of the Legislature generally, and as specifically reflected by the Subsequent Injury Fund amendments of 1986, it is concerned with insuring that weekly benefits inure to a claimant, both to assist a claimant and to keep her/him from requiring public assistance.[8]

---

**8.** In its letter supporting House Bill 1063, the Fund stated that because the Commission had refused to make weekly reductions in benefits, the Fund's only recourse when lump-sum awards were made was to terminate all weekly benefits. It opined that a method which permitted the lump-sum award to be recouped by a reduction in weekly benefits, rather than a termination "alleviate[ed] any harm to the claimant" while protecting the Fund and the employers. *Id.*

As we see it, and as we have previously stated, the primary purpose of the Act is to provide for periodic maintenance payments. In light of the legislative history we have reviewed, the 1986 amendments, though they eliminated the prohibition, have not changed that primary thrust of the Act, *i.e.*, periodic payments.

With that in mind, we must attempt to find a logical interpretation of section 36 that provides for a $45,000 cap, and immediately thereafter provides for continuing payments irrespective of the cap. We must then construe that section with section 49 to determine the appropriateness of the award in the case at bar.

We hold that lump-sum awards, if factually warranted, may be made with respect to benefits that accrue after the $45,000 cap is paid. Because the primary purpose of the Act is to provide for periodic payments to keep a claimant from requiring public assistance and for the further reason that lump-sum awards are not favored, we further hold that the post $45,000 benefits do not accrue and are not payable to a claimant until the expiration of the entire period of initial benefits reflected by the limit of $45,000 contained in the statute, whether those prior benefits are paid throughout that period or in a lump sum. No other interpretation we have been able to conceptualize gives meaning to the cap, the additional benefits irrespective of the cap, and the applicability of lump-sum awards to the post-cap period. Because the additional benefits provided for in section 36 do not become payable until the period of the initial award has passed, the subsequent benefits (that may never be payable) may not be subject to a lump-sum award until that time. While we acknowledge the "murky depths" in which we labor, our holding is, we suggest, the most logical interpretation of facially illogical provisions.[9]

---

**9.** As Judge Adkins opined in *Subsequent Injury Fund v. Teneyck,* 317 Md. 626, 631, 566 A.2d 94 (1989), "The contentions ... require us once again to explore the murky depths of Article 101." Commenting on the dissent, he stated in a footnote: "The dissent contends that this

██ The Commission may not, therefore, make a lump-sum award that would include benefits that might accrue after the initial $45,000 is exhausted until the period for which a claimant is entitled to receive the original benefits has expired. Thus, to the extent that the Commission's granting of the lump-sum award exceeds $45,000, its action was unauthorized and erroneous. As we shall hereafter reverse the granting of the entire award for other reasons, it is not necessary for us to compute the exact amount of the award that exceeded the $45,000 statutory limit.

### The Amount of the Award

██ Section 9–729(c) of the Labor and Employment Article (1991) mandates that when *any* lump-sum award is granted, the Commission *shall:*

(1) reduce the weekly rate of compensation until the amount of the lump sum would have been paid if it had been paid in weekly payments; and

(2) determine in the award:

(i) the dollar amount and number of weeks to be paid by the employer or its insurer at the reduced weekly rate; and

(ii) if payments are made from the Subsequent Injury Fund, the dollar amount and the number of weeks to be paid by the Subsequent Injury Fund at the reduced weekly rate.

As we see it, based on the reduction provision, there must be an evidentiary basis, not only in respect to a claimant's needs but also as to the period of benefits. We shall first address the evidentiary support contained in the record that, but for the premature award of an amount over $45,000, otherwise supports the period of time for which the Commission estimated the award should be recouped.

---

application ... may sometimes produce illogical results. If that is true, it is a problem that we have learned to live with in the world of worker compensation." *Id.* at 636 n. 6, 566 A.2d 94.

The extract indicates that in granting its final award of $60,000, the Commission, pursuant to the responsibility imposed by Article 101, section 49, computed the reduction for a period of 1,000 weeks (a $60 reduction per week for 1,000 weeks equals $60,000). It thus indicated that the lump-sum award would be recouped over a period of 19–20 years. While it is true that the claimant may not live for 19–20 years, there was absolutely no evidence (as opposed to speculation) presented by appellant before the Commission as to a life expectancy of less than that period. The Commission had evidence before it that at the time of the application for the award and the hearing, the appellee was 32 years old. The deduction to the weekly payments if the lump-sum award were to be upheld would terminate when appellant is 51 or 52 years old. The question before us then is whether the evidence of claimant's current age is sufficient to support the finding that the weekly payment reductions will recoup a lump-sum award within the 1,000 weeks, *i.e.*, that the appellee is likely to live for that period. That question was answered in *Victory Fireworks*, where the court stated in response to a similar question regarding the possibility of death terminating the weekly benefits upon which a lump-sum award was based prior to the total reduction:

> The record does show that the claimant at the time of the conversion was but forty-three years of age, and it is but fair to assume, in the absence of proof to the contrary, that the commission considered his life expectancy in making its lump-sum award.

170 Md. at 451, 185 A. 123. While *Victory Fireworks* was decided in 1936, we have been unable to find any cases that have held that under the Worker's Compensation Act a presumption of life expectancy may not be based on a Commission's knowledge of a claimant's age. In the case *sub judice*, appellant presented absolutely no evidence of claimant's life expectancy. The Commission made a *de facto* decision that the claimant's life expectancy was at least 19–20 years by creating that period of weekly benefit

reduction. Based upon *Victory Fireworks,* we cannot say that the Commission was wrong or that the trial court erred in affirming the Commission on this point. Thus, to the extent that the appellant questions the sufficiency of the evidence in regards to that portion of the lump-sum award as it relates to the period for which benefits would be paid, the Commission, based upon the evidence of appellee's age, determined that his life expectancy was 51–52 years, *i.e.,* a period sufficiently long to permit appellant to recoup the lump-sum award. The Court of Appeals in *Victory Fireworks* at least acknowledged its acceptance of that approach.

## I.

**Did the trial court err in finding that the Workers' Compensation Commission did not abuse its discretion by awarding the claimant a lump sum for sixty thousand dollars ($60,000) for reasons that were not either a business or living necessity and which would reduce his weekly benefits to an unacceptably low amount?**

■ We shall now address the matter of whether the Commission's granting of the lump sum award for the purposes requested by the plaintiff was correct. The resolution of this issue will necessarily resolve the third issue as well.

The Court reversed the trial court in the case of *Bethlehem Steel Co. v. Taylor,* 199 Md. 648, 87 A.2d 844 (1952), because the Commission failed to allow a discount [10] and granted a lump sum in excess of the amount proved by the evidence of need. The Court said:

> [L]ump sum awards should not be allowed merely to pay debts owed by a claimant, particularly in view of the fact that awards are not attachable. We have found no case in which an award for a purpose unrelated to the neces-

---

**10.** Discounts are now prohibited.

sary living or business needs of the claimant, has been approved.

In the instant case, however, there was evidence of a business need.... [W]e should not substitute our views for those of the Commission in a matter left to its discretion. It is sufficient if there is *substantial evidence* to support a finding of need.... To the extent of the difference, the award was clearly excessive.

*Id.* at 651, 87 A.2d 844 (emphasis added, citations omitted).

The Court earlier in *Petillo v. Stein,* 184 Md. 644, 652–53, 42 A.2d 675 (1945), opined that:

The policy of the statute does not favor lump-sum awards. They are the exception rather than the rule. While necessary in some cases, they are not made of right.

Additionally, this Court has stated that the Commission's discretion is limited to awarding lump-sum amounts only where necessary:

The Commission's discretion ... should be exercised only when necessary for the proper care of injured workers and their dependents, and may not be allowed merely to pay debts owed by claimants. They are not granted for purposes unrelated to the *necessary* living ... needs of the claimant.

*Univ. of Md. Medical Sys. Corp. v. Erie Ins. Exch.,* 89 Md.App. 204, 215, 597 A.2d 1036 (1991) (emphasis added).

We have earlier reviewed in our recitation of the facts the evidence presented by the appellant in support of his application for a lump-sum award. We recited that one of his purposes was to move from a one-room living arrangement for his four-member family to a $159,000 house in order to have a more comfortable living situation. When he was asked why he could not live in a less expensive townhouse, he responded that townhouses were multi-level and physical impairments would cause him difficulty in climbing stairs. He also stated that his hobby required the operation of power tools that were too noisy to use in multi-unit dwell-

ings. When asked why he could not rent an apartment on his compensation and his wife's salary instead of purchasing a $159,000 house, he responded that no equity could be accumulated in a rental arrangement. It was important to him that he build equity in a house so that his wife would have that equity if he died, considering his inability to procure life insurance.[11] He also responded that portions of the lump sum would be used to pay off bills and encumbrances.[12]

We have found no Maryland case in which the cost of a home, for which a lump sum has been awarded as a down payment, has negated the purposes for which the lump-sum provisions exist, *i.e.*, to improve an appellant's financial position and thus to reduce the likelihood that the claimant will need additional public assistance. We have in fact found no Maryland cases where a lump sum has been made for the purpose of making a down payment in the purchase of a house. There are few Maryland cases involving the need factor of lump-sum awards. *See Bethlehem Steel Co. v. Taylor*, 199 Md. 648, 87 A.2d 844 (1952) (prepayment of automobile payment); *Petillo v. Stein*, 184 Md. 644, 42 A.2d 675 (1945) (legal and medical fees and vocational rehabilitation).

Lump-sum awards, allegedly based on need, have been rejected in various types of cases in several foreign jurisdictions. In *Van Hooser v. Mueller Co.*, 741 S.W.2d 329 (Tenn.1987), a lump sum was granted to a claimant because the insurer failed to make periodic benefit payments. The appellate court reversed the lump-sum award, however, because the insurer had made the back payments by the time the Commission made the award. The court held that the back payments had sufficiently corrected the arrears,

---

**11.** We presume that his physical problems interfered with his ability to procure life insurance.

**12.** Appellant noted below and in its brief here that the lump sum was grossly inadequate to pay off those bills, make a down payment on the house, and pay settlement costs.

and thus the lump sum was unnecessary, saying: "[L]ump sum awards are an authorized exception to the general statutory purpose, and are *not* to be awarded as a matter of course." *Id.* at 330 (citation omitted). The claimant in *Fowler v. Consolidated Aluminum Corp.*, 665 S.W.2d 713 (Tenn.1984), requested a lump-sum award in order to manage the amount to generate more income. The court found the reason insufficient, saying: "The mere fact that the employee ... might be able to earn interest on the commuted amount ... has been held to be an insufficient reason for granting commutation." *Id.* at 715 (citations omitted). The Tennessee court in *Valles v. Daniel Construction Co.*, 589 S.W.2d 911, 912 (Tenn.1979), noted, consistent with the statutory and case law in Maryland, that: "The general theory underlying the workmen's compensation statutes is to provide for periodic payments, as a substitution for the regular income theretofore earned." It further held that lump-sum awards are exceptions to the general "scheme" and should only be cautiously considered.

The Supreme Court of Montana in *Stelling v. Rivercrest Ranches, Inc.*, 224 Mont. 313, 730 P.2d 388, 391 (1986), upheld the determination of the trial judge that a lump sum was inappropriate where the claimant desired to purchase a home without evidence that he was unable to live in the existing rental housing market. The claimant in *Stelling* also wanted to use portions of the lump sum to purchase an annuity in order to guarantee himself a sum certain over a longer period. The Montana court, however, did allow a partial lump sum to pay off a vehicle encumbrance where that encumbrance was a significant drain on the claimant's monthly finances. The claimant in *Garmann v. E.R. Fegert Co.*, 226 Mont. 432, 736 P.2d 123 (1987), asserted a purpose similar to the case *sub judice, i.e.,* the purchase of a home (he also wanted to purchase a truck and buy furniture). The Commission's denial of an award was upheld. The court noted that the "purpose of the periodic payment method is to preclude ... wasting the means of

support and thereby becoming a burden upon society." *Id.* 736 P.2d at 125 (citation omitted).

The purchase of savings certificates with a lump sum in order to earn a greater rate of interest exceeding the discount rate was rejected as an unnecessary need in *Court of Flags v. Outland,* 382 So.2d 443, 444 (Fla.App.1980), where the court said: *"[W]orker's compensation benefits are not intended as life insurance....* The record ... contains nothing to indicate that the claimant's ... 'interests' were directly affected in any way by his concern over either of the ... estate planning or money market considerations." (Emphasis added.) In *United States Fidelity & Guaranty Co. v. Nash,* 116 Ga.App. 123, 156 S.E.2d 550, 552 (1967), the claimant wanted to buy a new truck to haul wood, and it was held not to be an "exceptional circumstances[ ] ... nor strong and urgent reason[ ]...."

As we have indicated, some jurisdictions have accepted a broader range of purposes in awarding lump sums. *See Woodson v. Phillips Petroleum Co.,* 102 N.M. 333, 695 P.2d 483 (1985) (exceptional medical expenses of a dependent); *Hock v. Lienco Cedar Prods.,* 194 Mont. 131, 634 P.2d 1174 (1981) (mortgage, auto loan, and funeral expenses created exceptional circumstances for 18–year–old widow having only a tenth grade education and with an infant daughter to support); *Herndon v. City of Miami,* 224 So.2d 681 (Fla. 1969) (to purchase real estate).

We acknowledge that as to need sufficiency the Commission is the body charged with "special knowledge," and that we should not substitute our views for those of the Commission. *Bethlehem Steel Co.,* 199 Md. at 650, 87 A.2d 844 (quoting *Petillo,* 184 Md. at 653, 42 A.2d 675). In the case *sub judice,* however, appellee offered no evidence that the current rental market in Baltimore County could not have met the needs sought to be addressed by the Worker's Compensation statute. He basically rejected that alternative primarily because it does not permit the build up of equity. According to appellee, he desired to accumulate

equity to provide for his wife in lieu of the life insurance that was unavailable to him. As we have noted, the Worker's Compensation statute contains its own provisions for compensation of dependents of covered employees who die. *See* Md.Code Ann., Labor & Emp. § 9–640 (1991). It contains, more or less, comprehensive provisions for a claimant's surviving dependents. To the extent the legislative intention as to the needs of a claimant's survivors is determinable it is found in the Act itself, and the Act addresses that need. A claimant's wish to be awarded a lump-sum payment to build equity in realty in lieu of life insurance, is not, therefore, as we see it, contemplated by the Act.

Wagner also stated that rental properties and townhouses were unsuitable because his hobby required the use of power tools that would disturb neighbors. In the case of townhouses, he claimed that multi-floors would cause him physical problems.[13] There was absolutely no evidence presented that the rental market did not include detached single-level rental unit(s) of lesser cost that could accommodate his needs.[14] To the extent the lump-sum award was intended to pay his debts, it failed in that purpose as well. Additionally, as we hereafter indicate, this specific lump-sum award rather than decreasing the possibility that appellee will need public assistance, increases that possibility.

We hold that in this specific case the evidence was not sufficient to support a conclusion that the circumstances were so exceptional or extraordinary as to overcome the general rule that lump-sum payments are not favored. We

---

**13.** While his physical problems may or may not constitute an "exceptional" problem (the extract does not identify it), we doubt that his hobby would.

**14.** We do not suggest that Wagner's pursuit of a change in living accommodations is limited to rental units. Indeed, there may well be a single family detached dwelling that is modestly priced and where, with appropriate tax deductions (interest and real property taxes), the ability to make the mortgage payments may equate with rental payments. Approval of part payment towards such purchase is, of course, a matter within the sound discretion of the Workers' Compensation Commission. See footnote 15.

are especially cognizant that the two primary purposes of the statutory scheme for periodic payments are: (1) to provide for regular payments to replace the normal income the covered employee would have received had he/she not been injured; and (2) to avoid, by making payments periodically, the wasting of a claimant's means of support in order to prevent the claimant from becoming a burden on society. The lump-sum award in the case at bar, on the evidence heard, patently conflicts with the latter stated purpose.

A brief summary of appellee's post award situation emphasizes how the lump-sum award granted here defeats, or may defeat, the statutory scheme. The Commission, as a result of the lump-sum award, has reduced his benefits by 60 percent to $40 a week for 19 to 20 years (1,000 weeks). Approximately $100,000 would remain due on the house he originally proposed to purchase.[15] The exhibits indicate total monthly payments of $978 for principal, interest, and taxes alone. Presumably, he is responsible for the entire amount. Should the resources of his wife become unavailable by reason of her loss of employment, divorce, death, etc., he would have only $40 per week to pay all of his expenses including the mortgage, tax payments, etc. Even if he did not remain responsible for the house payment, there remains only $40 per week for other expenses. Clearly, his remaining compensation of $40 per week for 1,000 weeks is insufficient to meet even his basic needs, irrespective of the mortgage payments and other house expenses. If these expenses are factored in, he would be, except for his wife's income, immediately unable to meet his expenses. The lump-sum award granted here does not increase the chances that he will improve his business' capacity to earn income; he has no business. The award of a lump sum does not assist him in reducing his personal or living

---

**15.** At the time of the final award, the record indicates that the original house was no longer available. As a result, in granting the award, the Commission asserted continuing authority to later approve of a different house. We have dealt with the matter as presented to the Commission by the appellee, *i.e.*, the $159,000 house.

obligations. Rather, awarding the lump sum increases his obligations to a point where it is impossible to meet them.[16]

Based upon the specific facts of this case, we hold that by granting the $60,000 lump sum to appellant, the Commission has clearly decreased his ability to support himself and increased the possibility that he will be a burden on society. We hold that the Commission's award was in error, and the trial court erred in affirming that award.[17]

JUDGMENT REVERSED; CASE REMANDED TO THE TRIAL COURT WITH DIRECTIONS THAT THE CASE BE REMANDED TO THE COMMISSION IN ORDER FOR ITS LUMP–SUM AWARD TO BE RESCINDED; COSTS TO BE PAID BY APPELLEE.

---

16. We acknowledge that his wife is able to assist in, and may well be liable for, the payment of these obligations or some of them. As we review the Commission's decision, it was based solely on claimant's needs and abilities. His needs might well be met in part by his wife's income. That, however, was not a position taken by the Commission in assessing his needs. Therefore, we do not address it in assessing his obligations.

17. We have held that, under the circumstances of this case, where a lump-sum award substantially increases the possibility that a claimant will become dependent on public assistance, it is improper. We have also noted that the statute provides for compensation for survivors of deceased claimants, and thus we have questioned the appropriateness of the grant of lump-sum awards sought as a substitute for life insurance. We note that our opinion is based on the circumstances of this particular case. It is not inconceivable that lump-sum awards for the purpose of obtaining different living accommodations necessitated by a claimant's condition can be made that are unrelated to life insurance purposes, and that do not substantially increase the chances of a claimant becoming dependent on public welfare services.