# COERPER ET UX. *v.* COMPTROLLER OF THE TREASURY OF THE STATE OF MARYLAND

[No. 291, September Term, 1971.]

*Decided March 13, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Milo G. Coerper,* in proper person, for appellants.

*Jon F. Oster, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We are here presented with the question of whether the local income tax authorized by Code (1957, 1969 Repl. Vol.) Art. 81, § 283 (a) is to be "a percentage of the liability of such resident for State income tax" *before* or *after* application of the credit provided in § 290 of Art. 81. We shall here affirm the order of the Maryland Tax Court holding that the tax is a percentage of the liability before application of the credit.

Appellants, Milo G. Coerper and Lois H. Coerper, his wife, (Coerper) reside in Montgomery County. Mr. Coerper is a member of the Bar of this Court and of other courts. He is a partner in a law firm which has its principal office in New York City. He works in its office in Washington, D. C. As a partner in that firm he is required to pay income taxes to the City of New York and the State of New York on a portion of his share of the partnership's income based on the percentage of the overall firm profits which are derived from the New York office. The current controversy involves the liability of Mr. and Mrs. Coerper for the calendar years 1967 and 1968.

The relevant provisions of § 283 provide that the appropriate county authority "shall adopt, by reference, a local income tax imposed upon the residents of any county or Baltimore City as a percentage of the liability of such resident for State income tax." It further provides that any tax so adopted shall be not less than 20% nor more than 50% of "the State income tax liability of such resi-

dent." This came into the law with the passage of Chapter 142 of the Acts of 1967 implementing a report of the Committee on Taxation and Fiscal Reform published on February 1, 1967. There had been earlier "piggy back" income taxes in certain of the subdivisions. The committee report stated:

> "It is recommended that the present temporary taxing authority not be extended, and that it be replaced by an authority to levy a local income tax upon residents only. The tax is to be levied as a percentage of the State income tax to a maximum of 50 per cent. It is to be collected along with the State tax and returned to the subdivisions."

Section 290 was enacted by Chapter 277 of the Acts of 1939 and has remained unchanged since then. It provides:

> "Whenever a resident individual of this State has become liable for income tax to another state upon such part of his net income for the taxable year as is properly subject to taxation in such state, the amount of income tax payable by him under this subtitle shall be reduced by the amount of the income tax so paid by him to such other state upon his producing to the Comptroller satisfactory evidence of the fact of such payment; but application of such *credit* shall not operate to reduce the tax payable under this subtitle to an amount less than would have been payable if the income subjected to tax in such other state were ignored. The *credit* provided for by this section shall not be granted to a taxpayer when the laws of such other state allow a *credit* to such taxpayer substantially similar to that granted by § 291 hereof." (Emphasis added.)

It came on the heels of the passage of an income tax in

1937. See Judge Singley's opinion in *Katzenberg v. Comptroller*, 263 Md. 189, 191-92, 282 A. 2d 465 (1971), for a brief history of the income tax.

It is Coerper's contention that the figure upon which his county income tax should be computed is the amount due the State after allowance of the § 290 credit for the tax paid New York. In essence, what Coerper here seeks to do is to equate the ultimate sum which it may be found that they owe the State of Maryland for income tax, after all credits, with tax liability.

The cases hold that we should shun a construction of a statute which will lead to absurd consequences. *Pan Am. Sulphur v. State Dep't*, 251 Md. 620, 627, 248 A. 2d 354 (1968), and cases there cited. It is a hornbook rule of statutory construction that in ascertaining the intention of the General Assembly all parts of a statute are to be read together to find the intention as to any one part, and that all parts are to be reconciled and harmonized if possible. *Thomas v. Police Commissioner*, 211 Md. 357, 361, 127 A. 2d 625 (1956).

There are a number of provisions relative to credits for taxpayers on income tax in addition to § 290. Section 292 provides a credit for domestic corporations "against the income tax payable by it" for "so much of the annual franchise tax payable by it during the taxable year under the provisions of § 197 * * * as is in excess of $40." [1] Section 288 (g) provides, "There shall be credited against the income taxes imposed by subsections (a) and (b) of [§ 288] the personal property taxes payable [subsequent to] July 1, 1968 for purposes of taxation for the State of Maryland only." Code (1957, 1966 Repl. Vol.) Art. 23, § 427 (b) relative to Development Credit Corporation of Maryland and certain losses that may arise from it provides that each stockholder "shall be entitled to credit against any taxes subsequently becoming due to the State from such stockholder * * * a percentage of such loss equivalent to the highest rate of

---

1. Prior to the 1970 amendment effective January 1, 1971, the credit was for that part in excess of $25,

tax assessed against income for the year in which the loss occurs upon mercantile and business corporations."

We find persuasive *Kupper v. Fiscal Court of Jefferson County,* 346 S.W.2d 766 (Ky. 1961), in which the court said:

> "Before it can be determined whether this Act does in effect grant an exemption from tax it is necessary to distinguish between a tax exemption and a tax credit. In *City of Winchester v. Winchester Waterworks Co.,* 149 Ky. 177, 148 S. W. 1, 3, an exemption is defined as follows:
>
> > ' "Exemption" means free from liability, from duty, from service. It is a grace, a favor, an immunity, taken out from under the general rule, not to be like others who are not exempt, to receive and not to make a return.'
>
> In other words, an exemption completely absolves a potential taxpayer from any liability for, or responsibility concerning, the tax whatsoever. A tax credit, on the other hand, relieves the taxpayer from direct payment of all or a portion of the particular tax on the theory that it has been satisfied by some other method. The taxpayer remains subject to all of the requirements of the tax law and is only permitted to set off against his tax liability any amount with which he has been properly credited." *Id.* at 767.

The position argued for by the Comptroller would have Mr. and Mrs. Coerper paying no more state income tax than any other taxpayer of the State of Maryland with like income, exemptions, and deductions, unless the tax imposed by the foreign state were greater than that which would be imposed in Maryland upon that amount of income. That would be one of the perils of having income in a foreign state. Likewise, Mr. and Mrs. Coerper

would be paying exactly the same amount of local income tax as a neighbor with like income, exemptions, and deductions. The Coerper position would have the possible absurd result of Coerper's paying little or no local tax for the services provided by the county while a neighbor with similar income, exemptions, and deductions might be paying a substantial local tax to support those services.

An example of a practical application of the Coerper argument can be seen in this hypothetical situation. If a taxpayer's income tax liability to the State of Maryland for 1968 were $1,185.89, but he received a credit for taxes paid to another state in the amount of $1,158.74, the balance then remaining due the State of Maryland would be $27.15. If that taxpayer resided in a county imposing a local tax of 35% of the state income tax liability, as some counties did, the amount of local tax due the county would be $9.50. A next door neighbor with similar income, exemptions, and deductions, but with no credit for income tax paid to another state, would pay his county $415.06 income tax. Under the Coerper argument the language of § 292, § 288 (g), and Art. 23, § 427, to which we have alluded, would also call for the deduction of those items in the computation of "state income tax liability" and place the "piggy back" tax on the remaining result.

The key word here is "credit." The General Assembly granted a credit against the tax liability of a taxpayer. When it referred to state income tax liability it meant the amount of tax computed as due from a taxpayer on his income after allowance of the usual deductions and exemptions. The fact that there might be credited against that tax liability losses arising from ownership of shares of Development Credit Corporation, sums paid for state personal property taxes, or sums paid other states for income taxes was not intended to reduce one whit the liability of the taxpayer or the sum payable by the taxpayer to the local subdivision.

*Order affirmed; appellants to pay the costs.*