570 A.2d 1235

**Adrienne R. BRODSKY**

v.

**Irvin J. BRODSKY.**

**No. 120, Sept. Term, 1989.**

Court of Appeals of Maryland.

March 13, 1990.

Robert L. Hanley, Jr. (Nolan, Plumhoff & Williams, Chtd., both on brief) Towson, for appellant.

G. Warren Mix, Towson, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and CHARLES E. ORTH, Jr. (retired), Specially Assigned, JJ.

MURPHY, Chief Judge.

These cases involve the application and interpretation of the Maryland Uniform Gifts to Minors Act, Maryland Code (1957, 1974 Repl.Vol.), §§ 13–301 through 13–310 of the Estates and Trusts Article, as it relates to monetary gifts made by a father to his minor daughter; and to the authority of the circuit court to modify the child support provisions of a separation agreement after the child's 18th birthday.

## I.

Irvin J. Brodsky and Marcia Brodsky were married on July 2, 1967. A daughter, Adrienne, was born of the marriage on April 21, 1970. On August 16, 1977, Irvin and Marcia signed a written separation agreement and on January 17, 1979, they were divorced *a vinculo matrimonii* by the Circuit Court for Baltimore County. The divorce decree incorporated the terms of the parties' separation agreement; that agreement provided in pertinent part:

5. If the child of the parties makes application to and is accepted by any college before reaching her 21st birthday, the husband agrees to provide the child with an undergraduate college education to include tuition, fees, room and board, and other costs associated therewith. However, if at any time after enrolling, the child ceases to be a regular full-time student in good standing, the husband's obligations under this section shall terminate.

Prior to the separation and divorce of the parties, Irvin opened a savings account in December of 1974 as donor and

custodian for Adrienne under the Maryland Uniform Gifts to Minors Act (MUGMA). Additional MUGMA accounts were opened for Adrienne in 1978, 1983, 1987 and 1988. On May 17, 1989, the accounts contained $27,891.

In the spring of 1988, Adrienne enrolled as an undergraduate student at Boston University. After reaching the age of 18, she wrote to Irvin on May 18, 1988 and requested delivery to her of all the MUGMA accounts maintained on her behalf. Irvin did not comply with the request. On July 2, 1988, Marcia wrote to Irvin and demanded payment of Adrienne's first semester college expenses of $9,429.00. Receiving no reply, Marcia filed a petition on August 3, 1988, to hold Irvin in contempt for refusal to abide by the terms of the separation agreement and for an order requiring him to pay Adrienne's college expenses.

On August 25, 1988, Adrienne filed a complaint in the Circuit Court for Baltimore County against Irvin for an accounting, return of monies and other relief with regard to the MUGMA accounts maintained in her behalf. On May 9, 1989, Irvin filed a complaint in the Circuit Court for Baltimore County to modify the decree of divorce; he sought an order, *inter alia,* directing Adrienne and Marcia to contribute toward Adrienne's college expenses and to limit his obligation under the decree to "the cost of tuition at a more reasonably priced college or university."

The cases were consolidated and went to trial on May 17, 1989. The court (Nickerson, J.) entered an order on June 9, 1989, dismissing Marcia's contempt petition and also dismissing Irvin's complaint to modify the divorce decree. The court ordered Irvin to pay $18,427.38 for Adrienne's college expenses incurred to date, authorizing that sum to be paid from the MUGMA accounts held by Irvin as custodian for Adrienne. Irvin was also ordered to pay future college expenses incurred by Adrienne, pursuant to the terms of the separation agreement. As to Adrienne's suit against Irvin, the court denied Adrienne's request for delivery of the MUGMA accounts. It granted her request for an accounting from Irvin and ordered that Irvin remain as

custodian of all the MUGMA accounts until Adrienne reached the age of 21, or until the funds were exhausted.

Adrienne and Irvin each appealed to the Court of Special Appeals. Adrienne claimed that the trial court erred in denying her demand for delivery of all accounts created under the MUGMA. Irvin claimed that the trial court erred in dismissing his complaint to modify the divorce decree. We granted certiorari in both cases prior to a decision by the intermediate appellate court to consider the significant issues raised in the cases.

## II.

The Maryland Uniform Gifts to Minors Act (MUGMA) was repealed, effective July 1, 1989; it was replaced with the Maryland Uniform Transfers to Minors Act (MUTMA), Code (1989 Cum.Supp.), §§ 13–301 through 13–324 of the Estates and Trusts Article. Both acts specify a relatively simple and inexpensive method of making gifts to minors without the complexities associated with trust arrangements. Section 13–302(a) of MUGMA provided in pertinent part:

An adult may, during his lifetime or by will, make a gift of ... money ... to a person who is a minor on the date of the gift or distribution:

\*　　\*　　\*　　\*　　\*　　\*

(3) ... by paying or delivering it to a broker or a financial institution, for credit to an account in the name of the donor, another adult, a guardian of the minor, or a trust company, followed, in substance, by the words: "as custodian for (name of minor) under the Maryland Uniform Gifts to Minors Act."

Section 13–303(a) of MUGMA provides:

A gift made in a manner prescribed in this subtitle is irrevocable and conveys to the minor indefeasibly vested legal title to the ... money ..., but no guardian of the minor has any right, power, duty or authority with re-

spect to the custodial property except as provided in this subtitle.

The new Act, MUTMA, contains substantially similar provisions. In addition, it provides in § 13–322(c) that

this subtitle does not apply to custodial property held in a custodianship that terminated because of the minor's attainment of the age of 18 before July 1, 1989.

Adrienne became 18 on April 21, 1988 prior to the effective date of the MUTMA. Irvin contends that his custodianship of the accounts did not terminate on Adrienne's 18th birthday in view of a 1975 amendment to the MUGMA, which specified in § 13–302(b–1) that

[a] donor who makes a gift to a minor in a manner prescribed in subsection (a) of this section *may provide* that the custodian shall deliver, convey, or pay it over to the minor on his attaining the age of 21 years. (Emphasis added.)

Irvin asserts that when he opened the accounts for Adrienne, he intended to remain the custodian until she was 21 years old. While there is no evidence in the record that Irvin's intent in this regard was reduced to writing, the trial court nevertheless concluded that this was in fact Irvin's intention.

### III.

We first consider whether an intent to extend the custodianship of the gift until the minor's 21st birthday can be expressed orally, or was required to be manifested in writing to comply with § 13–302(b–1) of the MUGMA. This section, which became effective July 1, 1975, was enacted following the legislative change of the age of majority in Maryland from 21 to 18 years. Code (1957, 1987 Repl.Vol.) Art. 1, § 24. The 1975 amendment thus permitted a custodian to maintain the custodianship until the minor's 21st birthday. Absent compliance with requirements of § 13–302(b–1), however, the custodianship would cease on the minor's 18th birthday, at which time the custodian had a

duty to deliver all unexpended custodial property to the minor. *See* § 13–304(d) of the MUGMA.

In construing a statute, we look first to its language, *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513–14, 525 A.2d 628 (1987); in so doing, we assume that the words of the statute are intended to have their natural, ordinary and generally understood meaning in the absence of evidence to the contrary. *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730 (1986), and cases there cited. In this case, we consider the meaning of "may provide," as the legislature intended those words to be used, in § 13–302(b–1). The word "may" is generally understood as permissive, as opposed to mandatory, language. *See generally Planning Comm. v. Silkor Corp.,* 246 Md. 516, 522–24, 229 A.2d 135 (1967) (absent clear legislative indication to the contrary, "may" is presumed to apply in a permissive sense); 2A N. Singer, *Sutherland on Statutes and Statutory Construction* § 57.03 (rev. 4th ed. 1984). This comports with the general purpose of § 13–302(b–1) as an elective measure in designating the termination date for custodianship. The word "provide" is defined in Webster's Third New International Dictionary 1827 (1981), *inter alia,* as: "(2): to make a proviso or stipulation." In turn, "proviso" is defined as: "(1): an article or clause (as in a statute, contract or grant) that introduces a condition, qualification, or limitation and usually begins with the word *provided.*" *Id.* (emphasis in original). Additionally, "stipulation" is understood in common language as: "(d): a condition, requirement, or item specified in a contract, treaty, deed, will, or law." *Id.* at 2245. The preceding definitions indicate that in the context of § 13–302(b–1) "may provide" should be construed to require a specification in written form so that anyone inspecting the account would be guided by that intention. This conclusion is consistent with the purpose of the statute. In addition to the requirement of designating in writing that the gift is conferred under the provisions of the MUGMA in order to derive the benefits therefrom, *see* § 13–302(a), it was also the design of the legislature to

require the same formality when a donor intended to depart from the usual statutory provision that custodianship terminates when the minor becomes of majority age at 18. This formality is grounded in the need for documenting donative intent, a basic element of every *inter vivos* gift. *Dorsey v. Dorsey*, 302 Md. 312, 318, 487 A.2d 1181 (1985); *Schilling v. Waller*, 243 Md. 271, 276–77, 220 A.2d 580 (1966). Needless confusion and doubt otherwise may arise among other family members, financial institutions, and the courts in determining whether a donor's intent as expressed orally was accurately understood or even truly known, especially when the donor may subsequently become unavailable to explain the real intention.

Because Irvin made no written designation regarding his intent to extend custodianship until Adrienne's 21st birthday, we hold that the election under § 13–302(b–1) was not activated, and the custodianship was governed solely by § 13–304(d). Thus, Irvin had a duty to deliver to Adrienne all MUGMA accounts held for her upon attaining the age of 18. It follows that because the custodianship terminated before July 1, 1989, the MUTMA is inapplicable in view of the provisions in § 13–322(c) of that later enactment.

### IV.

We next consider whether the trial court erred in concluding that Irvin could use the money in Adrienne's MUGMA accounts to satisfy his independent obligation under the separation agreement to pay for Adrienne's college education.

Under § 13–303 of the MUGMA, Irvin's gifts of the several accounts to Adrienne were irrevocable. Indeed, Irvin treated the accounts as vested in Adrienne; he provided Adrienne's mother, Marcia, with annual tax information on Adrienne's accounts so that income tax returns could be filed on Adrienne's behalf. Because compliance with the MUGMA indefeasibly vests legal title to the property in the minor, the minor is deemed to have "earned" any and all

income on the accounts, whether such income is distributed to the minor. As the accounts in this case are the property of Adrienne, Irvin as custodian cannot dispose of the property to satisfy a personal obligation voluntarily incurred by him under the separation agreement to pay Adrienne's college expenses. Irvin is bound by the terms of that agreement as long as Adrienne is a full-time undergraduate student in good standing; these expenses need not be shared by Adrienne or her mother. *See Monticello v. Monticello*, 271 Md. 168, 173, 315 A.2d 520, *cert. denied*, 419 U.S. 880, 95 S.Ct. 145, 42 L.Ed.2d 121 (1974) (the objective law of contracts shall govern the construction and interpretation of separation agreements); *Heinmuller v. Heinmuller*, 257 Md. 672, 676, 264 A.2d 847 (1970) (a separation agreement is subject to the same general rules governing other contracts).

## V.

■ Finally, we consider whether the trial judge correctly determined that he was without authority to modify the support provisions of the divorce decree (which incorporated the separation agreement). Code (1984), § 8–103(a) of the Family Law Article provides:

(a) *Provision concerning children.*—The court may modify any provision of a deed, agreement, or settlement with respect to the care, custody, education, or support of any minor child of the spouses, if the modification would be in the best interests of the child.

Adrienne was not a minor on May 9, 1989 when Irvin filed his complaint to modify the decree by reducing the amount of his support obligation for Adrienne's college education. We therefore conclude, consistent with the view of the circuit court, that it was without authority to reduce Irvin's contractually incurred obligation to Adrienne.

AS TO THE PETITION OF IRVIN J. BRODSKY TO MODIFY THE DIVORCE DECREE: JUDGMENT AFFIRMED.

AS TO THE COMPLAINT OF ADRIENNE BRODSKY
FOR AN ACCOUNTING, RETURN OF MONIES AND
OTHER RELIEF: JUDGMENT VACATED AND CASE
REMANDED TO THE CIRCUIT COURT FOR BALTI-
MORE COUNTY FOR FURTHER PROCEEDINGS CON-
SISTENT WITH THIS OPINION.

COSTS TO BE PAID BY IRVIN J. BRODSKY.