635 A.2d 64

**Shannon BARR, a minor, etc.**

v.

**BARBERRY BROTHERS, INC., et al.**

**No. 619, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Jan. 6, 1994.

Randolph C. Baker (Lentz, Hooper, Jacobs & Blevins, P.A., on the brief), Bel Air, for appellant.

James A. Haynes, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen. and Thomas J. Michels, Asst. Atty. Gen., on the brief), Towson, for appellees.

Argued before BISHOP, WENNER and CATHELL, JJ.

CATHELL, Judge.

Marvin Barr (Marvin) was killed in a work-related accident. He was survived by Shannon Barr (appellant) and others. Appellant was partly dependent upon Marvin and began receiving partial dependent survivor benefits through Marvin's workers' compensation insurer. The trial court held that the statute, Md.Code (1991 Repl.Vol.),[1] § 9–682 of the Labor and Employment Article required that appellant's partial dependent survivor benefits be capped at $17,500. This appeal followed. The primary focus of our opinion involves the recodification of the pertinent statutory provisions. Former Article 101 section 36 provided in subsection (8)

(a) ... If there are wholly dependent persons ... the compensation shall be an amount ... not to exceed $45,-000.00.... If a surviving ... child continues to be totally dependent after the total amount of $45,000.00 has been paid, further payments ... shall be paid at the same weekly rate during ... her total dependency....

(b) If there are no wholly dependent persons ... but there are partly dependent persons, those partly dependent shall receive compensation as follows: ... and payments to continue during the partial dependency but not to exceed $17,500.00.

Then in subsection (d) the former statute provided, as to both wholly and partly dependent persons:

Payment ... shall continue ... until the child ... reaches the age of eighteen years provided, ... if each child ...

---

1. At the time of Marvin's death, October 28, 1988, Md.Code (1957, 1985 Repl.Vol., 1988 Cum.Supp.), Art. 101 § 36 was the applicable statute. It was recodified without relevant substantive change as Labor and Employment Code Annotated section 9–682.

[is] wholly dependent . . . and incapable of self-support by reason of mental, or physical disability . . . or the child . . . [is] still partly dependent . . . payments . . . shall continue as under paragraphs (a), (b) and (c) herein. . . .

Paragraphs (a), (b) and (c) herein referred to the cap language in section 36. That language in old section 36(8) that referred to wholly dependent persons has been recodified as section 9–681(c) and (g). Section 9–681(g) expressly provides for the continuation of payments past $45,000 if the person remains wholly dependent:

If a . . . child continues to be wholly dependent after the total amount of $45,000.00 has been paid, the employer . . . shall continue to make payments . . . during the total dependency of the surviving child.

During the recodification, the language of old section 36(8) as to *partly* dependent persons, which had been intertwined with the language relating to wholly dependent persons by being placed in the same former subsection was recast as section 9–682, where, outwardly unfettered by its association with the language relating to the extension of the cap as to wholly dependent persons, it now states:

(c) *Duration of payment—In general.*—Except as otherwise provided in this section, the employer or its insurer shall pay the weekly death benefit:

(1) for the period of partial dependency; or

(2) until $17,500 has been paid.

. . . .

(e) *Same—Child who becomes 18.*—(1) Except as provided in paragraphs (2) and (3) of this subsection, the employer . . . shall continue to make payments to, or for the benefit of, a surviving child until the child reaches 18 years of age.

Paragraphs (2) and (3) refer to provisions for payments past the age of eighteen under certain circumstances.

The parties agreed below that construction of the new statute was the only issue and that a summary judgment proceeding was the appropriate method for the trial court to

address the issue. After discussing the statute's provision for payments in respect to wholly dependent survivors, the court discussed the differences between the provisions for wholly dependent and partly dependent survivors. It found that:

> Section [ (c) ](2) clearly states that the $17,500 is an absolute cap. Unlike the case of the wholly dependent spouse, even if the partial dependency continues, no more payments may be made.

It further opined that "the Legislature clearly intended to treat wholly and partially dependent individuals different-ly. . . ." The trial court subsequently discussed the basis for its interpretations—that the legislature had a "logical policy basis" for making a distinction—saying:

> A wholly dependent child . . . is one who depended on the deceased worker for all of their needs and had no other source of maintenance and, but for the death of the worker, could reasonably have assumed that the deceased parent's support would continue until they reached the age of majori-ty or they become self supporting. On the other hand, a partially dependent child by definition has alternative sources of support to which they can look for the necessities of life and may or may not have had a reason to expect that the deceased worker would be solely responsible for provid-ing them with the necessities of life. [Citations omitted.]

Appellant presents but one question, which we rephrase:

> Whether a partially dependent minor should continue to receive partial benefits until age eighteen even if benefits totalling $17,500 are received prior to the attainment of age 18?

We shall construe the statute to hold that the minor should not and will affirm. We explain.

### The Law

The Court of Appeals in *Tracey v. Tracey,* 328 Md. 380, 387–89, 614 A.2d 590 (1992), recently opined, in reference to construing an alimony statute:

While the language of the statute is the primary source for determining legislative intention, the plain meaning rule of construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body. The Court will look at the larger context, including the legislative purpose, within which statutory language appears. Construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided.

. . . .

. . . *Cf. Guardian Life Ins. v. Ins. Comm'r,* 293 Md. 629, 643, 446 A.2d 1140 (1982) (where a particular provision of a statute is part of a single statutory scheme the legislative intention must be gathered from the entire statute rather than from only one part) and *Howard Co. Ass'n, Retard. Cit. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210 (1980) (a statute must be examined as a whole and the interrelationship or connection among all of its provisions considered). [Citations and footnote omitted.]

The Court noted in *Subsequent Injury Fund v. Teneyck,* 317 Md. 626, 632, 566 A.2d 94 (1989), that where there is a "lack of relevant legislative history, we must rely substantially on the language of the statutes in the context of the goals and objectives they seek to achieve," citing *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513–16, 525 A.2d 628 (1987). *See also Brodsky v. Brodsky,* 319 Md. 92, 98, 570 A.2d 1235 (1990) ("[W]e look first to its language, . . . we assume that the words of the statute are intended to have their natural, ordinary and generally understood meaning in the absence of evidence to the contrary.") (citing *Kaczorowski,* 309 Md. at 513–14, 525 A.2d 628); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730 (1986), and cases cited in *Tucker.* The Court in *Tucker* opined:

In construing the meaning of a word in a statute, the cardinal rule is to ascertain and carry out the real legislative intention. The primary source of legislative intent is, of course, the language of the statute itself. . . . Of course, where statutory provisions are clear and unambiguous, no

construction or clarification is needed or permitted, it being the rule that a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation.

. . . .

That a term may be free from ambiguity when used in one context but of doubtful application in another context is well settled. . . .

. . . .

. . . We . . . recognize the rule that where a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment. . . .   [T]he court . . . may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.

*Id.* at 73–75, 517 A.2d 730 (citations omitted).

In *Subsequent Injury Fund v. Ehrman,* 89 Md.App. 741, 746–47, 599 A.2d 875 (1992), we quoted from the earlier Court of Appeals case of *Mazor v. Dep't of Correction,* 279 Md. 355, 360–61, 369 A.2d 82 (1977), and noted that Court's

six principal guidelines of statutory interpretation:

"[T]he cardinal rule of construction of a statute is to ascertain and carry out the real intention of the Legislature. . . .

The primary source from which we glean this intention is the language of the statute itself. . . .

And in construing a statute we accord the words their ordinary and natural signification. . . .

If reasonably possible, a statute is to be read so that no word, phrase, clause or sentence is rendered surplusage or meaningless. . . .

Similarly, wherever possible an interpretation should be given to statutory language which will not lead to absurd consequences....

Moreover, if the statute is part of a general statutory scheme or system, the sections must be read together to ascertain the true intention of the Legislature."

In *Ehrman,* we subsequently noted that "[w]hile it is correct to state that the Workers' Compensation Act is to be construed liberally in favor of injured employees, 'this does not mean that the Act should be construed to provide for compensation beyond that authorized....'" *Id.* 89 Md.App. at 751, 599 A.2d 875.

We said in *C & R Contractors v. Wagner,* 93 Md.App. 801, 805–06, 614 A.2d 1035 (1992), *cert. denied,* 329 Md. 480, 620 A.2d 350 (1993), a case involving the $45,000 cap of section 9–637 of the Labor and Employment Article as it was interconnected with the lump sum provisions of prior Article 101, section 49:

It is the *interplay* [emphasis added by us] of these two provisions that gives rise to the question raised by appellant. To resolve the question, we must determine the result of this intrasectional interaction.

In *State v. Bricker,* 321 Md. 86, 92–93, 581 A.2d 9 (1990), the Court of Appeals recently reviewed the standards of statutory construction saying:

... Resultant conclusions are to be reasonable, logical and consistent with common sense.

When several statutes are *in pari materia,* any interpretation must be made with full awareness of *all* the relevant enactments. It is presumed that the General Assembly acted with full knowledge of prior legislation and intended statutes that affect the same subject matter to blend into a consistent and harmonious body of law. Therefore, various consistent and related enactments, although made at different times and without reference to one another, nevertheless should be harmonized as much

as possible. [Citations omitted, emphasis added, bracketed material in original.]

*In Swarthmore Co. v. Kaestner,* 258 Md. 517, 527, 266 A.2d 341 (1970), the Court of Appeals said: "We should not presume that the legislative body intended to enact an ineffective and invalid law." We said in *Consolidated Rail Corp. v. State,* 87 Md.App. 287, 292–93, 589 A.2d 569 (1991): "[A] court should neither resort to subtle or forced interpretations for the purpose of extending or limiting the operation of the statute...." [Citations omitted.]

*See also Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483 (1992) ("[W]e approach the analysis ... from a 'commonsensical,' ... perspective...."). We further noted in *Wagner,* 93 Md.App. at 809, 614 A.2d 1035, that when substantive changes are made it indicates an "intent to change the meaning of that statute." We also perceive that the opposite, *i.e.,* no substantive change, reflects a legislative intent that the meaning of the statute is *not* meant to be changed.

Chief Judge Wilner, discussing the character of a statute, noted "In essence ... [two questions should be considered when interpreting a statute:] What was the paramount legislative intent; [and] what is its paramount effect?" *Anderson v. Dep't of Health & Mental Hygiene,* 64 Md.App. 674, 691, 498 A.2d 679 (1985), *rev'd on other grounds,* 310 Md. 217, 528 A.2d 904 (1987), *cert. denied sub nom. Maryland v. Anderson,* 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988).

It is the duty of this Court to declare law as the General Assembly has made it so as to give effect to the true legislative intent behind the statute. The search for legislative intent begins with an examination of the statute itself and if the language is of clear import, the inquiry ends. If, however, the language of the statute is ambiguous or of doubtful import, this Court may properly examine the history of the passage of the act and reports of commissions and committees concerning the legislation.

*Crawley v. General Motors Corp.,* 70 Md.App. 100, 105–06, 519 A.2d 1348 *cert. denied,* 310 Md. 147, 528 A.2d 473 (1987) (citations omitted).

With these legal precepts in mind, we now direct our attention to the language of the sections at issue and each party's interpretation of that language. As we do so, we note that the arguments of both appellant and appellee are, at least facially, plausible.

Prior to 1973, the predecessor statute to Labor & Employment Article section 9–682—Md.Code (1957, 1964 Repl.Vol., 1972 Cum.Supp.), Art. 101 § 36—contained no language providing for continuation of payments to partial dependents beyond the weeks and amounts stated as maximums. The prior statute as relevant to the case *sub judice* provided benefits for partial dependents,

> in the amount not exceeding sixty-six and two-thirds per centum of the average weekly wages or forty-eight dollars per week ... for ... 416 weeks ... not to amount to more than a maximum of five thousand dollars.

Md.Code (1957, 1964 Repl.Vol.), Art. 101 § 36(8)(b). The prior statute made no further provisions (relevant to the case at bar) for partial dependents. Language similar to that contained in the current statute first found its way into the law in 1973 Md.Laws Chapter 671. Among other things, Chapter 671 made major modifications in respect to the benefit statute not only as to partly dependent persons but also as to wholly dependent persons. In addition, Chapter 671 created the $45,000 maximum benefit applicable for wholly dependent persons and, in Article 36(8)(a), provided new language for persons wholly dependent, stating:

> if a surviving wife ... or child continues to be totally dependent *after the total amount of $45,000.00 has been paid,* further payments ... shall be paid at the same weekly rate.... It is the intention herein that a surviving wife or husband ... shall receive at least ... $45,000.00.... [Emphasis added.]

After discussing the amount of payments for partial dependents and the maximum limits, 416 weeks with a maximum sum of $9,000.00, the act created a separate subsection (d) that apparently applied to both partial and total dependents in that it made no partial/whole distinction.

> (D) Payment to ... a surviving child ... shall continue ... until the child ... reaches the age of eighteen years....

The subsection continues, creating a special provision for wholly dependent children extending their payments past the age of eighteen:

> [H]owever, if each child or children though 18 years of age or over are wholly dependent ... and incapable of self-support by reason of mental or physical disability [the payments would continue]....

The subsection, after creating a special class of mentally and physically incapacitated children that is applicable only to "wholly" dependent children, reverts back to language making the remainder applicable to partial dependents:

> *or* the ... children though eighteen ... or over are still partly dependent ... payments ... *shall* continue as under paragraphs (A), (B) and (C).... [Emphasis added.]

At this point, the prior statute provided that payments would continue to be paid to dependents until they were eighteen or until a cap was reached. In respect to wholly dependent persons, the payments would continue even "after the total amount of $45,000.00" had been paid. No similar language as to the cap was contained in the statute as to partial dependents (other non-relevant expanding language was included as to the possibilities of payments extending past the age of eighteen under certain circumstances). That language did not permit the extension of payments that exceeded the $17,500 cap for partial dependents.

The codifiers, through the 1964 Replacement Volume, included the provisions aforesaid in subsection 8(d) of section 36. Except for changing the section number to (7)(d), that status remained intact until 1991. By 1991 Md.Laws Chapter 8, the

Workers' Compensation Article was recast as Title 9 of the Labor and Employment Article. The provisions above, which previously had been in one subsection and were clear and unambiguous when considered in one subsection, were reenacted into two different sections—Section 9–681 "Wholly dependent individuals" and Section 9–682 "Partly dependent individuals." Putting the two provisions into two distinct subsections separated the provision that wholly dependent persons could exceed the $45,000 cap under certain circumstances from the provision discussing payment to partial dependents. When they were in the same subsection, the wholly dependent cap exception was viewed in contrast with the partial dependent provisions. The absence of similar cap provisions for partial dependents in the same subsection had interpretive importance in construing the intentions of the Legislature, *i.e.*, the absence of the cap exception as to partial dependents in the same subsection where it was extant as to the wholly dependent persons was significant.

We next note that Chapter 8 of the Laws of 1991, was passed

> [T]o revise, restate and recodify the laws ... relating ... to: ... workers' compensation....
>
> ... By repealing Article 101, Workmen's Compensation ... [Section] 36 ... 8(a) through (h) and (j) ... and the subtitle "Claims and Compensation; Benefits...."

Thereafter, Chapter 8 enacts the new Workers' Compensation Law as Title 9. As relevant to Section 9–682, the Revisor's Note stated: "This section is new language derived without substantive change from former Art. 101, § 36(b), [and] (d)...."

Some conflicts were apparent to the revisors during the recodification process. Subsection 9(D) of Chapter 8 pertaining to surviving spouses states that "if a surviving spouse ... remarries ... the employer ... shall make payments ... for 2 years after the ... remarriage." The revisors noted that the relationship between the $17,500 cap contained in subsection (C) and the provisions in section (D) relating to the two-

year continuation for remarrying surviving spouses was unclear. They stated that it could be argued that the payments could "continue for 2 years even if $17,500 is paid." The revisors failed to see a similar issue, namely, the one arising here, might be generated by separating the two provisions as to wholly and partly dependent persons into separate subsections. Thus, a similar argument is made by appellant as to the provisions of section (e) relating to continuation of partly dependent children's payments until age eighteen under the statute. Subsection (e) provides that "[T]he employer ... shall continue to make payments ... until the child reaches 18.... If a child who is 18 ... or older remains partly dependent ... the employer ... shall continue to make payments...."

It is this interplay between the pertinent provisions of subsection (c) and (e) that gives rise to this appeal.

Appellee argues that Labor & Employment Article subsection 9–681(g), when it refers to a continuation of payment to a wholly dependent child, adds the clause—"after the total amount of $45,000 has been paid." Appellee argues that because the language "after a total amount of ... [$17,500] has been paid" is *not* contained in section 9–682(e), that subsection should not be construed as authorizing a continuation of payments to partly dependent surviving children who have received the maximum limit. Appellee further argues:

> Thus, the most sensible reading of the statute provides three potential termination points for partly dependent surviving children: (1) when the period of partial dependency ends; (2) when the child reaches age 18, unless one of the two exceptions to the 18–year–old limitation applies; or (3) when the payments total $17,500. The payments must end at the earliest of these termination points.

Appellant argues that section 9–682(e) should be construed separately without reference to section 9–681(g).

We initially note that the Revisor's Notes contained in section 9–681 and section 9–682 both state that the language of the respective section was derived "without substantive

change" from that language of the prior section 36. As we have indicated, the provisions now found separately in sections 9–681 and 9–682 were, prior to the revision, contained in the same section. That one section, however, treated them differently. Paragraph (7)(a) (prior to 1987 it was paragraph (8)(a)) of the old section 36 set out the percentages of weekly payments for "wholly" dependent children as 100% and noted that the payments were "to continue to be paid during total dependency but not to exceed $45,000.00, except as otherwise provided in this section. . . ." Then it expressly provided that benefits in the weekly amount could continue to be paid "after the total amount of $45,000.00 has been paid. . . ."

Paragraph (7)(b) related only to partly dependent persons and was conspicuously silent as to any express statement that after the maximum of $17,500 had been received, a partly dependent person could continue to receive weekly benefits.

As we interpret the language of paragraph (7)(d), it provided for continuing payments under certain circumstances consistent with the respective caps on benefits contained in paragraphs (a), (b) and (c). Under those circumstances, (a) essentially provided for no maximum for wholly dependent persons and (b) provided for a cap maximum payment of $17,500 for partly dependent persons.

As we perceive it, the reenactment and recodification of the Workers' Compensation Act has, to some extent, lessened the previous confusion in interpreting section 36. That confusion resulted from the differing limits of benefits for both whole and partial dependents being contained in one section. This was done by placing them, "without substantive change," in separate sections. Thus, when the new section states that a partly dependent person's benefits are to continue in accordance with subsection 9–682(c), that section is properly construed to read that a partly dependent person, whose benefits have not reached $17,500 and whose partial dependency continues, shall continue to receive benefits during the dependency until the sum of $17,500 is reached. Our review of the legislative history of these provisions, including the separation

of the wholly and partly dependent provisions into separate sections with no substantive change, inevitably results in the conclusion we have reached. We note in concluding that the problem presented here was apparently overlooked or unforeseen by the revisors. In *Department of Gen. Servs. v. Harmans Associates Ltd. Partnership,* 98 Md.App. 535, 545–46, 633 A.2d 939, 944 (1993), we stated:

> As a general rule, statutes enacted as mere code revision are presumed not to contain substantive changes unless the intent to make such changes is clear....
>
> ....
>
> Here, in particular, there is absolutely no evidence that, in a pure Code Revision bill, the Legislature intended to abrogate the right of appeal to this Court. Indeed, there is "persuasive evidence" that such was not the case.... The Revisor's Note to SFP, § 15–223, which was part of the bill, states that "[t]his section is new language derived *without substantive change* from former SF §§ 11–137(e) and 11–139." (Emphasis added.) We would regard an abrogation of the right of appeal from the decision of the circuit court to be a substantive change in the law, and thus presume from the Revisor's Note that the Legislature did not intend such a result.

We "would regard an abrogation" of the $17,500 cap for partial dependents under the age of 18 "to be a substantive change in the law and thus presume from the Revisor's note that the Legislature did not intend such a result."

Judge Carr was correct. We affirm.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.