689 A.2d 1316

**COMPTROLLER OF THE TREASURY**

v.

**Robert J. HICKEY et al.**

**No. 954, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

March 4, 1997.

John K. Barry, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Gerald Langbaum, Assistant Attorney General, on the brief), Annapolis, for appellant.

Argued before MOYLAN, CATHELL and EYLER, JJ.

CATHELL, Judge.

At issue in this case is the application of section 10–703(c)(1) of the Tax–General Article. With certain exceptions, section 10–703(a) provides taxpayers with a credit against Maryland income tax "for tax on income paid to another state." The amount of this credit is determined under section 10–703(c)(1). This section provides:

[T]he credit allowed a resident under subsection (a) of this section is the lesser of:

(i) the amount of allowable tax on income that the resident paid to another state; or

(ii) an amount that does not reduce the State income tax to an amount less than would be payable if the income subjected to tax in the other state were disregarded.

Md.Code (1988, 1996 Supp.), § 10–703(c)(1) of the Tax–General Article (TG).

Mr. and Mrs. Robert Hickey, appellees, are residents of Maryland. During the relevant tax years, 1988 to 1990, Mr. Hickey was a partner in the Washington, D.C. office of a law firm that maintained offices in both New York and Washington. Although Mr. Hickey worked exclusively in Washington, some of his income was deemed taxable by the State of New York.[1] Appellees filed nonresident New York State income tax returns for the years 1988 to 1990 and paid New York income tax. Pursuant to section 10–703(c)(1)(i) of the Tax–General Article, appellees claimed a credit on their Maryland Tax returns for the years 1988 to 1990 that was equal to the amount of income tax paid to New York.

The Comptroller of the Treasury (the Comptroller), appellant, reduced appellees' credits for the relevant tax years. The Comptroller asserted that a credit could not be claimed for the entire amount of income tax paid to New York and reduced appellees' credits by applying section 10–703(c)(1)(ii) of the Tax–General Article, as interpreted by the Comptroller. This reduction in the tax credits for the tax years 1988

---

1. We shall discuss New York's income tax structure infra.

through 1990 caused a reduction in appellees' tax refunds for those years.

Appellees, asserting that the Comptroller improperly applied section 10–703(c)(1)(ii) of the Tax–General Article and that the Comptroller improperly denied their refund claims, filed a Petition of Appeal in the Maryland Tax Court. In ruling in favor of the Comptroller, the Tax Court interpreted section 10–703(c)(1) so that "the amount of tax due the State of Maryland cannot be reduced below a number that would be payable to the State of Maryland if the income from the other state had not been received by the taxpayer at all." Appellees thereafter appealed to the Circuit Court for Montgomery County, which reversed the Tax Court's decision. In reversing the Tax Court, the circuit court reasoned:

> The objective of income tax credit provisions is to avoid double taxation by providing for a credit against the Maryland income tax liability to the extent that income taxed by Maryland is also taxed in another jurisdiction. Section 10–703 of the Tax–General Article achieves this objective by focusing on the income tax subjected to tax by another state.

> [Appellees] argue that Section 10–703(c)[ (1) ] (i) applies to the case *sub judice* and that the Comptroller's interpretation of the statute, therefore, violates the plain meaning of the language of the statute; whereas, the Comptroller claims that Section 10–703(c)[ (1) ] (ii) applies because New York State's method of taxing non-resident income does in fact lower the Maryland income tax which would be payable if the income subject to New York State income tax was disregarded. This Court finds that the Comptroller's and the Tax Court's reading of the statute is in stark contrast with public policy and Maryland law.

> The purpose of section 10–703 is to avoid double taxation. If the Tax Court's decision is permitted to stand, [appellees'] and all similarly situated taxpayers will be subject, in varying degrees, to double taxation.

The Comptroller presents one question on appeal:

Did the Circuit Court err when it allowed New York's distinctive method of tax calculation to effectively repeal the Maryland statutory limitation on credit for income taxes paid to another state?

We answer this question in the affirmative and shall reverse the judgment of the circuit court.

The controversy in the case *sub judice* involves the application of section 10–703(c)(1) (particularly subsection (c)(1)(ii)) of the Tax–General Article, which provides for the amount of credit that a taxpayer may take for income tax paid to another state. The credit is equal to the lesser of:

(i) the amount of allowable tax on income that the resident *paid* to another state; or

(ii) an amount that does not reduce the State income tax to an amount less than would be payable if *the income subjected to tax in the other state* were disregarded.

TG § 10–703(c)(1)(emphasis added). Appellees argue that the application of this section to their factual situation permits them to take a credit pursuant to section 10–703(c)(1)(i). They aver this is so because of the method by which New York taxes nonresidents. New York determines a nonresident taxpayer's tax rate, and therefore his or her tax liability, referred to in New York as a taxpayer's "tax base," based upon all of a nonresident taxpayer's income, including that actually taxable in New York and all other income as well. The tax liability, tax base, is then reduced by multiplying the tax liability by a percentage equal to the income earned in New York divided by the taxpayer's total income. Appellees argue that under New York's tax laws, all of their income was "subject to tax" in New York.[2] They further argue that the application of

---

2. New York computes a tax, referred to in New York as the "tax base," on all income wherever earned, then reduces the tax actually due to reflect New York's portion of total income. Appellees, in calculating their credit in Maryland, utilized the figure used to compute the New York "tax base" on the New York State tax return without any reduction to reflect that portion of income not attributable to New York. As we shall discuss later, New York does not tax the portion of income not attributable to New York.

section 10–703(c)(1)(ii) results in an amount which is greater than the amount obtained by application of section 10–703(c)(1)(i). Appellees thus assert that they correctly claimed a credit pursuant to section 10–703(c)(1)(i) for the entire amount of income taxes paid to New York.

The Comptroller disagrees with appellees' application of section 10–703(c)(1)(ii). The Comptroller asserts that, although New York determines a nonresident taxpayer's income tax rate and income tax liability (tax base) based upon all of his or her income, the income tax liability (tax base) is then reduced by multiplying the tax liability (tax base) by a percentage, which is obtained by dividing the income allocable to New York by the taxpayer's total income. Therefore, the Comptroller asserts, all of a taxpayer's income is not "subject to tax" in New York and this percentage should be multiplied by the amount appellees claimed was "subject to tax" in New York. The Comptroller's application of section 10–703(c)(1)(ii) results in a lesser credit than that claimed by appellees.

## APPLICATION AND PURPOSE
## OF SECTION 10–703(c)(1)

Section 10–703(c)(1) of the Tax–General Article provides the amount of credit a taxpayer may take if that taxpayer paid income tax to another state. The credit is limited to the lesser of the amount of income tax paid to the other state or "an amount that does not reduce the State income tax to an amount less than would be payable if the income subjected to tax in the other state were disregarded." TG § 10–703(c)(1)(i)–(ii).

The amount of income tax paid to another state is generally obtained by multiplying the income allocable to the other state by the appropriate income tax rate. There are states, however, such as New York, that impose an income tax rate on nonresidents based on all income and then reduce that tax liability (tax base) by multiplying the tax liability by a percentage.

The following example illustrates the application of section 10–703(c)(1)(i) in states that calculate a taxpayer's income tax according to the income allocable to that state, i.e.., non New York-type tax structures:

*Example 1*—TP earned $100,000; of this, $60,000 was earned in Maryland, and $40,000 was earned in State X. State X taxes the income earned in that state at 10%. TP would pay $4,000 ($40,000 * .10) of tax to State X, and this would be the tax credit TP would be permitted to take under section 10–703(c)(1)(i).

Calculating the tax credit under section 10–703(c)(1)(ii) is slightly more complicated. The credit under this section is equal to "an amount that does not reduce the State income tax to an amount less than would be payable if the income subjected to tax in the other state were disregarded." TG § 10–703(c)(1)(ii). The language of this section indicates that the credit is equal to the Maryland State income tax payable less the Maryland State income tax that would be payable if the income "subject to tax" in the other state were disregarded. The example below illustrates the application of section 10–703(c)(1)(ii):

*Example 2*—TP earned $100,000; of this, $60,000 was earned in Maryland, and $40,000 was earned in State X. State X taxes the income earned in that state at 10%. Maryland also taxes its income at 10%. Under section 10–703(c)(1)(ii), TP would be permitted to take a credit of $4,000 (($100,000 * .10)—(($100,000—$40,000) * .10)). Pursuant to section 10–703(c)(1)(i), the credit would be the same, $4,000 ($40,000 * .10). A Maryland taxpayer would therefore pay a Maryland income tax of $6,000 (($100,000 * .10)—$4,000).

As can be seen from the above examples, the credit is the same under both subsections (c)(1)(i) and (c)(1)(ii) of section 10–703 when the tax rate in the two states is the same. Additionally, the examples illustrate one of the purposes of section 10–703(c)(1): to avoid double taxation of income. *See Roach v. Comptroller of the Treasury,* 327 Md. 438, 449, 610

A.2d 754 (1992) ("The obvious purpose of the credit granted by § 10–703 of the Tax–General Article is to avoid double taxation on the same income.").

■ Another purpose of section 10–703(c)(1) is to ensure that Maryland collects the same amount of income tax, even though another state may impose a higher tax rate on the income allocable to that state. The example below illustrates this purpose:

> *Example 3*—TP earned $100,000; of this, $60,000 was earned in Maryland, and $40,000 was earned in State X. State X taxes income earned in that state at 15%. Maryland taxes income at 10%. Under section 10–703(c)(1)(i), TP would pay $6,000 ($40,000 * .15) in taxes to State X. Under section 10–703(c)(1)(ii), TP's credit would be equal to $4,000 (($100,000 * .10)—(($100,000—$40,000) * .10)). Therefore, TP's credit would be limited to $4,000. TP would have to pay $6,000 (($100,000 * .10)—$4,000) in taxes to Maryland.

As this example, when compared with Example 2, illustrates, Maryland receives the same amount of income tax ($6,000) even though the other state taxes income allocable to that state at a rate higher than the Maryland rate.

## THE PARTIES' CONTENTIONS

The disagreement in this case revolves around the application of section 10–703(c)(1)(ii) to states, such as New York, that determine a taxpayer's tax rate and tax liability (tax base) based upon all of his or her income, regardless of where that income was earned. That tax liability (tax base) is then reduced by multiplying it by a percentage.

The Court of Appeals of New York described its tax laws relative to nonresident taxpayers in *Brady v. State*, 80 N.Y.2d 596, 592 N.Y.S.2d 955, 607 N.E.2d 1060, 1061–62 (1992):

> Under Tax Law § 601(e)(1), the tax of a nonresident is first calculated "as if [the taxpayer] were a resident." Thus, the nonresident's tax base ... is determined by applying the appropriate graduated rate in Tax Law § 601(a) through (c) to the taxpayer's total income from all sources (less any

statutory deductions, exemptions or credits). The taxpayer's total income is derived from "New York adjusted gross income", which is determined by reference to the taxpayer's "federal adjusted gross income".

Residents pay their entire tax base. For nonresidents, however, the amount is reduced by the percentage of income earned in New York compared to total income. Therefore, while residents and nonresidents with the same total income are taxed at the same rate, the nonresident pays tax only on the percentage of income attributable to New York. [Brackets in original; citations omitted; footnote omitted.]

Appellees argue that, in such states, all of a taxpayer's income is "subject to tax." Therefore, the application of section 10–703(c)(1)(ii) yields a larger credit than does section 10–703(c)(1)(i). The example below illustrates appellees' contention:

*Example 4*—TP earned $100,000; of this, $60,000 was earned due to activities in Maryland, and $40,000 was earned due to activities in New York. Maryland imposes a tax rate of 10%, while New York imposes a tax rate of 15%. The tax payable in New York would be $6,000 (($100,000 * .15) * ($40,000 / $100,000)). This would also be the amount of TP's credit under section 10–703(c)(1)(i). The amount of the credit under section 10–703(c)(1)(ii) would be $10,000 (($100,000 * .10)—(($100,000—$100,000) * .10)). The amount of the credit under section 10–703(c)(1)(i) is less, and therefore, TP would be able to take a credit for all the income tax paid to New York and pay $4,000 (($100,000 * .10)—$6,000) of tax to Maryland.

The Comptroller disagrees with appellees' application of section 10–703(c)(1)(ii). The Comptroller argues that in calculating the credit under section 10–703(c)(1)(ii) of the Tax–General Article, if a taxpayer pays income tax to states such as New York (where all of a taxpayer's income is used to calculate his or her tax rate and tax liability (tax base)), the percentage used to reduce the tax liability (tax base) should be

used to reduce the net income, which includes all income, in the other state. The following example illustrates the Comptroller's application of section 10–703(c)(1)(ii):

> *Example 5*—TP earned $100,000; of this, $60,000 was earned due to activities in Maryland, and $40,000 was earned due to activities in New York. Maryland imposes a tax rate of 10%, while New York imposes a tax rate of 15%. The tax payable in New York would be $6,000 (($100,000 * .15) * ($40,000 / $100,000)). This would be the amount of TP's credit under section 10–703(c)(1)(i). The percentage of income attributable to New York would be 40% ($40,000 / $100,000). The income subject to tax in New York would therefore be $40,000 ($100,000 * .40). The amount of the credit under section 10–703(c)(1)(ii) would be $4,000 (($100,-000 * .10)—(($100,000—$40,000) * .10)). The amount of the credit under section 10–703(c)(1)(ii) is less, and therefore, TP would pay $6,000 (($100,000 * .10)—$4,000) of income tax to Maryland.

## RESOLUTION

The Court of Appeals recently addressed whether the District of Columbia's tax on unincorporated businesses was a "tax on income" so that a taxpayer could claim a credit pursuant to section 10–703(a) of the Tax–General Article in *Roach, supra.* In the resolution of that case, it was necessary for the Court to determine whether the District of Columbia tax was an "income tax" or a "franchise tax." The *Roach* Court explained:

> [W]e take that characterization [of the tax] from the interpretation of the statute by the highest court of the District of Columbia. While the nature of another jurisdiction's statute for purposes of Maryland law is for this Court to decide, nevertheless, to the extent that we rely on the other jurisdiction's characterization of its statute in deciding that issue of Maryland law, we take the statute with whatever interpretive gloss has been placed upon it by the highest court of the other jurisdiction. This principle was set forth long ago by Chief Justice Marshall for the Supreme Court

in *Elmendorf v. Taylor*, 10 Wheat. 152, 159–160 [6 L.Ed. 289] (1825)....

327 Md. at 444–45, 610 A.2d 754 (footnote omitted).

The Court of Appeals of New York, New York's highest court, addressed the state's income tax on nonresident taxpayers in *Brady supra.* In that case, the plaintiffs challenged the constitutionality of New York's method of determining the income tax on nonresidents. As relevant to this case, the plaintiffs alleged that the New York tax provisions "violate due process because presumably higher taxes arising from higher tax rates demonstrate that New York is in effect impermissibly taxing out-of-State income." *Id.* 592 N.Y.S.2d at 957, 607 N.E.2d at 1062. In discussing New York's tax structure, the court stated: "[W]hile residents and nonresidents with the same total income are taxed at the same rate, *the nonresident pays tax only on the percentage of income attributable to New York." Id.* (emphasis added). The New York court framed the plaintiffs' due process challenge as the following question: "[I]n these circumstances, is out-of-State income being impermissibly taxed?" *Id.* 592 N.Y.S.2d at 957, 607 N.E.2d at 1063. It answered the question in the negative and held that "the subject matter here regulated is a tax on in-State income, which is within the jurisdiction of the State." Id. 592 N.Y.S.2d at 959, 607 N.E.2d at 1064. After addressing the plaintiffs' constitutional challenge based on the Privileges and Immunities Clause of the United States Constitution, the court noted:

> Plaintiffs' real quarrel, in the end, is with the graduated tax. A system of progressive taxation apportions the tax burden based on ability to pay—higher income taxpayers can pay more and are therefore taxed at a higher rate than lower income taxpayers. This system does not implicate the State or Federal Constitution so long as the rates are applied, as here, in a nondiscriminatory manner and *only to taxable New York income.*

*Brady,* 592 N.Y.S.2d at 960, 607 N.E.2d at 1065. (emphasis added). Other states that tax nonresident taxpayers in a

manner similar to New York are in accord with the holding of the *Brady* court that the tax structure does not tax out-of-state income. *See Stevens v. State Tax Assessor,* 571 A.2d 1195, 1197 (Me.), cert. denied, 498 U.S. 819, 111 S.Ct. 65, 112 L.Ed.2d 40 (1990); *Wheeler v. State,* 127 Vt. 361, 249 A.2d 887, 890 (Vt.), appeal dismissed, 396 U.S. 4, 90 S.Ct. 24, 24 L.Ed.2d 4 (1969).

The decision of the Court of Appeals of New York clearly demonstrates that New York does not tax out-of-state income. New York only taxes income allocable to New York. As indicated by the Court of Appeals of New York, the out-of-state income is included in a nonresident's New York tax return in order to determine the proper tax rate. It, in effect, then uses that rate to tax only New York income. New York does not tax income derived from non-New York activities. Therefore, appellees' contention that New York "subjects to tax" all of a nonresident taxpayers' income is erroneous. The income "subject to tax" in New York is determined, as argued by the Comptroller, by multiplying the New York taxable income, as derived from the New York tax return, by the percentage used to reduce the New York tax liability (tax base).

■ Examining the nature and purpose of section 10–703(c)(1) of the Tax–General Article, we also conclude that all of appellees' income was not "subject to tax" in New York. We recently stated the rules of statutory construction in *Lombardi v. Montgomery County,* 108 Md.App. 695, 702–03, 673 A.2d 762 (1996):

In undertaking an analysis of this section, we must first set forth the principles that guide our interpretation of a statute. Our end, in this respect, is to determine the intent of the Legislature when it adopted the section now in dispute. *State v. Kennedy,* 320 Md. 749, 755 [580 A.2d 193] (1990); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73 [517 A.2d 730] (1986). We "begin[ ] with the words of the statute" itself. *Harris v. State,* 331 Md. 137, 145 [626 A.2d 946] (1993); *Holman v. Kelly Catering, Inc.,* 334 Md. 480,

485 [639 A.2d 701] (1994); see also *State v. Bricker,* 321 Md. 86, 92 [581 A.2d 9] (1990) ("When interpreting a statute, the starting point is the wording of the relevant provisions."). In the absence of evidence to the contrary, "we assume that the words of the statute are intended to have their natural, ordinary and generally understood meaning." *Brodsky v. Brodsky,* 319 Md. 92, 98 [570 A.2d 1235] (1990); *Barr v. Barberry Bros., Inc.,* 99 Md.App. 33, 37 [635 A.2d 64] (1994). Moreover, "where statutory provisions are clear and unambiguous, no construction or clarification is needed or permitted, it being the rule that a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation." *Tucker,* 308 Md. at 73 [517 A.2d 730]; *Barr,* 99 Md.App. at 37–38 [635 A.2d 64]; see also *Consolidated Rail Corp. v. State,* 87 Md.App. 287, 292–93 [589 A.2d 569] (1991).

However, "the plain meaning rule of construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body." *Tracey v. Tracey,* 328 Md. 380, 387 [614 A.2d 590] (1992); *Barr,* 99 Md.App. at 37 [635 A.2d 64]. In this respect, "pertinent parts of the legislative language [should be read] together, giving effect to all of those parts if we can, and rendering no part of the law surplusage." *Sinai Hosp., Inc. v. Department of Employment & Training,* 309 Md. 28, 40 [522 A.2d 382] (1987); *Holman,* 334 Md. at 485 [639 A.2d 701]. [Brackets in original.]

Judge Smith, writing for the Court of Appeals in *Coerper v. Comptroller of Treasury,* 265 Md. 3, 6, 288 A.2d 187 (1972),[3] stated:

---

**3.** In *Coerper v. Comptroller of Treasury,* 265 Md. 3, 288 A.2d 187 (1972) the Court of Appeals addressed the predecessor statute of section 10–703 of the Tax–General Article. The issue in that case was "whether the local income tax authorized by Code (1957, 1969 Repl.Vol.) Art. 81, § 283(a) is to be 'a percentage of the liability of such resident for State income tax' before or after application of the credit provided in § 290 of Art. 81." *Coerper,* 265 Md. at 4, 288 A.2d 187. The Court, upholding the Maryland Tax Court, held that "the tax is a percentage of the liability before application of the credit." *Id.*

The cases hold that we should shun a construction of a statute which will lead to absurd consequences. It is a hornbook rule of statutory construction that in ascertaining the intention of the General Assembly all parts of a statute are to be read together to find the intention as to any one part, and that all parts are to be reconciled and harmonized if possible. [Citation omitted.]

In construing section 10–703(c)(1), we must reconcile and harmonize both subsections so as to effectuate the plain language of the statute and the statute's purpose. As we indicated above, the language of section 10–703(c)(1)(ii) indicates that its purpose is to require that Maryland receive, at a minimum, the income tax due on income attributable to Maryland regardless of another State's method or rate of taxation. The Comptroller's interpretation of section 10–703(c)(1) leads to a result that is consistent with the purposes of the statute; it prevents the double taxation of Maryland income and permits Maryland to receive income tax on income attributable to Maryland. To hold as appellees suggest would permit them to pay less tax in Maryland in reliance on New York's artifice of first establishing the tax rate based on all income, in order to establish a higher rate, thus enabling New York to tax its income at a higher rate than it would otherwise be able to if the New York income alone was considered in establishing the rate. Stated differently, it combines the Maryland income with the New York income only temporarily and for the sole purpose of "jacking up" the rate. Once it has taken that taxpayer unfriendly step, it then determines a taxpayer's tax liability (tax base) and reduces the tax liability (tax base) so that it only taxes New York income. New York never taxes Maryland income.

We also note the anomaly in appellees' interpretation of section 10–703(c)(1)(ii) when one compares Example 3 with Example 4 above. In Example 3, a taxpayer who earns $100,000 ($60,000 of which is attributable to Maryland) pays $6,000 in taxes to the other state and $6,000 in taxes to Maryland. In Example 4, which illustrates appellees' application of section 10–703(c)(1)(ii), a taxpayer who also earns

$100,000 ($60,000 of which is attributable to Maryland), pays $6,000 of taxes to New York, but only pays $4,000 of taxes in Maryland. As this example demonstrates, were we to adopt appellees' approach, a Maryland resident taxpayer with income from a state that directly taxes the income allocable to that state, i.e., a state with a tax structure unlike the New York-type structure, would receive a $4,000 credit, while a Maryland resident taxpayer with New York income, with the same amount of income and subject to the same tax liability, would receive a $6,000 credit. The result would be that the taxpayer who ultimately pays income taxes in New York on that state's income would pay less income tax to Maryland merely because New York initially uses Maryland income to "jack up" the rate that is applied only to New York income.

The Comptroller's application of section 10–703(c)(1)(ii) does not lead to such anomaly. If Example 3 is compared with Example 5, one notes that the taxpayer, regardless of the foreign state to which he or she pays income taxes, receives the same credit and pays the same amount of Maryland income tax when the total income is the same, the tax rate is the same, and the percentage of total income allocable to the foreign state is the same.

Accordingly, we hold that in states where the taxpayer's tax rate and tax liability (tax base) is computed on all income and the tax liability is thereafter reduced by a percentage, that percentage is used to calculate the income subject to tax by the foreign state under section 10–703(c)(1)(ii). Thus, the Comptroller correctly reduced appellees' tax credits for the tax years 1988 to 1990.

**JUDGMENT OF THE CIRCUIT COURT IS RE-VERSED; COSTS TO BE PAID BY APPELLEES.**